**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| IN RE ARIAD PHARMACEUTICALS, INC. | ) | No. 1:13-cv-12544 (WGY) |
| SECURITIES LITIGATION | ) | |

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS <u>ACTION SETTLEMENT</u>

## TABLE OF CONTENTS

Preliminary Statement ..................................................................................................1

Factual Background ......................................................................................................2

    I.     Procedural History ...........................................................................................2

    II.    Settlement Consideration ................................................................................4

ARGUMENT ................................................................................................................5

    I.     The Settlement Of This Action Is In The Best Interest Of The settlement
         Class And Should Be Preliminarily Approved ...........................................5

         A.    The Settlement is the Result of Arm's-Length Negotiations by Well-
              Informed and Experienced Counsel .............................................. 7

         B.    The Proposed Settlement Falls Well Within a Range of Reasonableness .. 8

    II.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED
         FOR SETTLEMENT PURPOSES PURSUANT TO RULES 23(a) AND
         (b)(3) ..........................................................................................................10

         A.    The Requirements of Rule 23(a) Are Satisfied ........................................ 10

         B.    The Requirements of Rule 23(b)(3) Are Satisfied .................................... 15

    III.   The Proposed Notice Is Adequate .................................................................18

    IV.   The Court Should Adopt the Deadlines Set Forth in the Order for Notice
         and Hearing ....................................................................................................20

CONCLUSION .............................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

STATUTES, RULES AND REGULATIONS

SECONDARY AUTHORITIES

## PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the City of Fort Lauderdale Police & Fire Retirement System and William A. Gaul (the "Settlement Class Representatives"),[1] on behalf of themselves and the proposed Settlement Class, respectfully submit this memorandum of law in support of the joint motion for preliminary approval of the proposed Settlement of this class action.

As outlined in the Stipulation, in exchange for the payment of $3.5 million in cash for the benefit of the Settlement Class, the Settlement will release all Released Defendant Parties from all Settled Claims. Settlement Class Representatives and Plaintiffs' Co-Lead Counsel believe the Settlement represents a favorable result for the Settlement Class given the risks, costs, and duration of continued litigation, and warrants preliminary approval by this Court.

Settlement Class Representatives respectfully request that this Court enter the proposed Preliminary Order for Notice and Hearing in Connection with Settlement Proceedings (the "Order for Notice and Hearing"), annexed to the Stipulation and submitted separately herewith for the Court's convenience. The Order for Notice and Hearing, among other things: (i) preliminarily approves the Settlement as within a range of reasonableness; (ii) schedules a hearing (the "Settlement Fairness Hearing") to consider the fairness, reasonableness, and adequacy of the proposed Settlement, the proposed Plan of Allocation, and Plaintiffs' Co-Lead Counsel's application for an award of attorneys' fees and expenses; (iii) approves the forms and methods of disseminating pre-hearing notice to the Settlement Class, and directs issuing this

---

[1] Capitalized terms not otherwise defined herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement dated November 29, 2017 (the "Stipulation") and filed contemporaneously herewith, as Exhibit 1 to the accompanying Declaration of Sanford P. Dumain ("Counsel Declaration"). All references to "Ex. ___" herein are exhibits to the Counsel Declaration.

notice; (iv) appoints the Claims Administrator recommended by Plaintiffs' Co-Lead Counsel to administer the Settlement and assist with its implementation; (v) establishes procedures and a deadline for persons to request exclusion from the Settlement Class; (vi) establishes procedures and a deadline for objecting to the terms of the Settlement, Plan of Allocation, and/or requested attorneys' fees and expenses; and (vii) establishes procedures and a deadline for submitting Claim Forms for payments from the Net Settlement Fund.

## FACTUAL BACKGROUND

### I.      PROCEDURAL HISTORY

On October 10, 2013, the initial complaint in this action was filed. ECF No. 1. On January 9, 2014, the Court appointed lead plaintiffs[2] and approved their selection of lead and liaison counsel, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). ECF No. 95. On February 18, 2014, Lead Plaintiffs filed a consolidated complaint, ECF No. 112. On March 25, 2014, plaintiffs filed the Corrected Consolidated Complaint for Violations of the Federal Securities Laws, the operative complaint in this action (the "Complaint"). ECF No. 131. In the Complaint, plaintiffs asserted, under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, claims pertaining to a number of misrepresentations and omissions allegedly made by Defendants from December 12, 2011 through October 30, 2013. Complaint, ¶¶ 146-282. Plaintiffs also asserted claims under Sections

---

[2] In addition to the Settlement Class Representatives The City of Fort Lauderdale Police & Fire Retirement System and William A. Gaul, (i) Joseph Bradley ("Bradley"), (ii) Pension Trust Fund for Operating Engineers ("Operating Engineers"), and (iii) Automotive Industries Pension Trust Fund ("Automotive Industries") were also appointed lead plaintiffs on January 9, 2014. While their purchases of ARIAD common stock were made within the class period alleged in the filed complaints, their shares were only held during the Settlement Class Period, not purchased or otherwise acquired. Therefore, Bradley, Operating Engineers, and Automotive Industries are not members of the Settlement Class and are not bound by or eligible to participate in this Settlement.

11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o, against ARIAD, some of its officers, and its underwriters relating to a secondary offering in January 2013. Complaint, ¶¶ 416-485.

Defendants moved to dismiss the Complaint on April 14, 2014. ECF No. 147. On March 25, 2015, the Court granted defendants' motion and dismissed the case in its entirety. ECF No. 174.

On April 21, 2015, plaintiffs appealed to the U.S. Court of Appeals for the First Circuit. ECF No. 175. On November 28, 2016, the First Circuit reversed the dismissal of the Exchange Act claims predicated on statements made by Defendants on December 11, 2012. *In re ARIAD Pharms. Sec. Litig.,* 842 F.3d 744, 757 (1st Cir. 2016). The First Circuit affirmed the dismissal of the other claims, including the dismissal of the claims from December 12, 2011 to December 10, 2012 and from December 15, 2012 to October 30, 2013 and the claims under the Securities Act, and remanded the case back to the Court. ECF No. 178.

Defendants filed an answer on February 2, 2017. ECF No. 193. On February 7, 2017, the Court referred the case to Alternative Dispute Resolution to be conducted by May 2017. ECF No. 195.

On March 6, 2017, plaintiffs filed a Motion for Class Certification for shareholders damaged by the alleged December 11, 2012 misstatements and omissions and filed a Memorandum of Law in Support of the Motion for Class Certification. ECF Nos. 197, 198.

On March 9, 2017, Defendants filed a Motion for Judgment on the Pleadings together with a Memorandum of Law in support of the motion. ECF Nos. 203, 204. On March 23, 2017, plaintiffs filed a Memorandum of Law in Opposition to Defendants' Motion for Judgment on the

Pleadings. ECF No. 208. On April 18, 2017, Defendants filed a Reply to Plaintiffs' Response to their Motion for Judgment on the Pleadings. ECF No. 212.

On May 1, 2017, a mediation session scheduled before Magistrate Judge Donald L. Cabell was canceled by Court Order, ECF No. 213, and retired United States District Judge Faith Hochberg was engaged as private mediator by the Parties.

On May 18, 2017, the Court denied Defendants' Motion for Judgment on the Pleadings. ECF No. 225.

The mediation before Judge Hochberg took place on May 24, 2017 at the New York offices of Labaton Sucharow LLP. At this mediation, counsel for the Parties, on behalf of their respective clients, entered into a term sheet setting forth all material deal points associated with the resolution of the Action.

## II.   SETTLEMENT CONSIDERATION

The Settlement provides for the release of the Released Defendant Parties from the Settled Claims in exchange for payment by Defendants of $3.5 million in cash into an interest-bearing escrow account for the benefit of the Settlement Class. The Settlement consideration and any accrued interest, after the deduction of any attorneys' fees and expenses awarded by the Court, Notice and Administration Costs, and Taxes (the "Net Settlement Fund"), will be distributed to all Settlement Class Members who submit timely and valid Claim Forms in accordance with the Plan of Allocation approved by the Court and orders of the Court.

**ARGUMENT**

I.  **THE SETTLEMENT OF THIS ACTION IS IN THE BEST INTEREST OF THE SETTLEMENT CLASS AND SHOULD BE PRELIMINARILY APPROVED**

It is well-established in this Circuit that there is a "'clear policy in favor of encouraging settlements.'" *Durrett v. Housing Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (quoting *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 616 F.2d 1006, 1014 (7th Cir. 1980)); *see also United States v. Comunidades Unidas Contra la Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000) (noting "the strong public policy in favor of settlements"); *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009) ("policy encourages settlements"). This is especially so in the context of complex class action litigation. *See In re Lupron® Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("[T]he law favors class action settlements."), *aff'd*, 677 F.3d 21 (1st Cir. 2012); *see also Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985) ("[W]e should point to the overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved.").

Federal Rule of Civil Procedure 23(e) requires court approval for any compromise of a class action. *See Nat'l Ass'n of Chain Drug Stores*, 582 F.3d at 44; *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 106 (D. Mass. 2010). In *Hochstadt*, the court explained that approval of a settlement is a two-step process which first requires the court to make a preliminary determination regarding the "fairness, reasonableness, and adequacy" of the settlement to determine if it warrants public notice and hearing. *Id.* at 97 n.1 & 106-07 (citing *Manual for Complex Litigation* ("MCL") § 13.14 (4th ed. 2004)). If so, "'the final decision on approval is made after the hearing.'" *Hochstadt*, 708 F. Supp. 2d at 106 (quoting MCL § 13.14, at 173).

At this stage of the proceedings, the Court must preliminarily determine whether the Settlement is reasonable. *Hochstadt*, 708 F. Supp. 2d at 107. The Court should examine whether the Settlement is within the range of possible approval, bearing in mind that the Court will have the opportunity to consider all of the relevant factors in depth at a subsequent fairness hearing, which is the second step in the settlement approval process. *See id.* at 107-08. Unless the preliminary evaluation discloses reasons to doubt the fairness of the proposed class settlement or other obvious deficiencies, a court should grant a motion for preliminary approval, and direct the preparation and dissemination of the notice of certification of the class, the proposed settlement, and the date of the final settlement hearing. *See* MCL § 21.632 & n.976; *Hochstadt*, 708 F. Supp. 2d at 106-07.[3]

"A presumption of fairness attaches to the court's preliminary fairness determination when '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Hochstadt*, 708 F. Supp. 2d at 107 (quoting *In re Lupron® Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004)).

Settlement Class Representatives request that the Court take the first step in the settlement approval process and grant preliminary approval of the Settlement such that notice of the Settlement can be given to the Settlement Class. As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement, this Settlement is well within the range of possible approval and therefore warrants preliminary approval.

---

[3] The second step of the process, provided a reviewing court has preliminarily approved the proposed settlement, is for the court to conduct a formal fairness hearing where arguments and evidence may be presented in support of, or in opposition to, the settlement as being fair, reasonable, and adequate. *See* MCL § 21.634. At the conclusion of the formal fairness hearing, the court will then determine whether final approval of the class settlement should be granted. *Id.*

### A.     The Settlement is the Result of Arm's-Length Negotiations by Well-Informed and Experienced Counsel

The Settlement is the result of arm's-length negotiations including a day-long mediation session before the Honorable Faith Hochberg (Ret.), which took place on May 24, 2017 at the New York offices of Labaton Sucharow LLP. The negotiations were well-informed by the exchange of comprehensive mediation statements. The mediation was indispensable in airing the issues and obstacles to a resolution and clarifying the strengths and weaknesses of the Parties' claims and defenses. At this mediation, counsel for the Parties, on behalf of their respective clients, entered into a term sheet setting forth all material deal points associated with the resolution of the Action.

Additionally, Settlement Class Representatives have vigorously litigated this case for nearly four years, including an appeal to the First Circuit. This prosecution included: review of publicly available information about the Company; briefing the motion to dismiss the Complaint and an appeal to the First Circuit challenging the Complaint's dismissal; briefing Settlement Class Representatives' motion for class certification; and preparing for and participating in mediation. Moreover, Defendants produced approximately 800 pages of documents in connection with formal discovery, which had just started to get underway when the Parties agreed to settle. Thus, Plaintiffs' Co-Lead Counsel and Settlement Class Representatives have had a sufficient opportunity to assess and develop the merits of their case.

Further, the judgment of the Parties' counsel – who are highly experienced in securities class action litigation – that the Settlement is a fair and reasonable resolution of the Action should be given considerable weight. *See Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable

and adequate should be given significant weight."), *aff'd sub nom.*, 318 F.3d 42 (1st Cir. 2003); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsel, who are experienced attorneys and have represented to the Court that they believe the settlement provides to the Class relief that is fair, reasonable and adequate.").

In light of the full understanding and appreciation of the strengths and weaknesses of their case, Plaintiffs' Co-Lead Counsel have concluded that the Settlement—reached as a result of arm's-length negotiations and mediation before Judge Hochberg—is fair, reasonable, and adequate to Settlement Class Representatives and the Settlement Class, and in their best interests.[4]

### B.    The Proposed Settlement Falls Well Within a Range of Reasonableness

Finally, the $3.5 million cash settlement is well within the range of reasonableness under the circumstances warranting preliminary approval of the Settlement and the issuance of notice to the Settlement Class, particularly taking into account the defenses available to Defendants and the risk of continued litigation.

As an initial matter, the First Circuit shortened the Class Period to just a few days with only two alleged misleading statements remaining. With such a shortened Class Period and a low estimated damages figure, there was a risk that the damages would be quickly overwhelmed by litigation expenses if the Action proceeded.

---

[4] "In evaluating the fairness of the Settlement, the Court does not rule on the merits of either the Class's claims or [defendant's] multiple defenses." *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 76 (D. Mass. 1999) (citing *Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers v. Unisys Corp.*, 858 F. Supp. 1243, 1266 (E.D.N.Y. 1994) (approval of settlement does not require adjudication of merits)).

As to liability, Defendants will likely continue to argue that Settlement Class Representatives will not be able to prove that the challenged statements were materially false when made. For instance, Defendants will no doubt continue to assert that their December 11, 2012 statement that "pancreatitis," with a 5% incidence rate, "is the most prevalent" serious adverse event associated with ponatinib was accurate, even though serious "arterial occlusive or thromboembolic events" occurred in 8% of patients; Defendants will maintain that it was legitimate to report arterial thrombotic events as cumulative events rather than a single adverse event. Defendants will also argue that their statement that ponatinib would be approved "overall" with a "favorable label" was not misleading because Defendants were referring to the favorability of ponatinib's label with respect to indication, not safety. Defendants will maintain that they did not act with scienter when allegedly making the challenged statements.

Further, according to analyses prepared by Settlement Class Representative's damages expert, aggregate damages during the four day Class Period, assuming liability and loss causation were established, would only total approximately $10.5 million. Any successful efforts by Defendants to chip away at the Class's damages evidence could eviscerate the Class's recovery. Given the estimate of damages, the Settlement represents an outstanding recovery of approximately 33.3%. This estimated recovery falls well above the range of reasonableness. *See Medoff v. CVS Caremark Corp.*, No. 09-cv-554-JNL, 2016 U.S. Dist. LEXIS 19135, at *18-19 (D.R.I. Feb. 17, 2016) (court approved $48 million settlement representing approximately 5.33% of estimated recoverable damages and noting that this is "well above the median percentage of settlement receeveries in comparable securities class action cases").

## II.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES PURSUANT TO RULES 23(A) AND (B)(3)

As part of the Settlement, the Settlement Class Representatives respectfully request that the Court preliminarily certify the proposed Settlement Class under Rules 23(a) and (b)(3). When "'[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'" *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)) (alteration in original). Nevertheless, "[w]hen a settlement class is proposed, it is incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members." *In re Lupron®*, 228 F.R.D. at 88. "This cautionary approach notwithstanding, the law favors class action settlements." *Id.* (citing *City P'ship Co.*, 100 F.3d at 1043).

Securities class actions are ideally suited for class treatment. *See, e.g., In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 56 (D. Mass. 2010) ("[S]ome types of cases are uniquely well-suited to class adjudication, and '[p]redominance is a test readily met in certain cases alleging consumer or securities fraud. . . .'") (second alteration in original). In addition, "[i]nvestors seeking damages for violations of federal securities are often considered the prototypical class action plaintiffs." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 31 (D. Mass. 2008). Here, the Settlement Class Representatives assert that the requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied.

### A.   The Requirements of Rule 23(a) Are Satisfied

#### 1.   The Members of the Proposed Class Are so Numerous That Joinder of all Members Is Impracticable

"In order to meet the numerosity requirement, plaintiffs must demonstrate that the putative class is 'so numerous that joinder of all members is impracticable.'" *In re Evergreen*

*Ultra Short Opp. Fund Sec. Litig.*, 275 F.R.D. 382, 388 (D. Mass. 2011) (quoting Fed. R. Civ. P. 23(a)(1)). The numerosity requirement is seldom disputed in securities fraud cases. *See In re Sonus Networks, Inc. Sec. Litig.*, 247 F.R.D. 244, 248 (D. Mass. 2007). ARIAD is a publicly traded company, and as of December 14, 2012, ARIAD had 166.7 million shares of common stock issued and outstanding. ECF No. 198-1 (Coffman Decl.) ¶ 70.[5] Throughout the Class Period, ARIAD's common stock was actively traded on the NASDAQ. *Id.* ¶ 24. The numerosity requirement is met.

### 2.     Questions of Law and Fact are Common to the Proposed Class

The commonality requirement of Rule 23(a)(2) does not require that all, or even most, issues be common, nor does it require that common issues predominate. "A 'single common legal or factual issue can suffice' to satisfy the 23(a)(2) requirement, 'the commonality requirement ordinarily is easily met.'" *Sonus Networks*, 247 F.R.D. at 248 (quoting *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003)).

Courts look favorably upon class action treatment where standardized conduct is directed uniformly to all of the putative class members, as Defendants' misrepresentations and omissions were here. *See, e.g.*, *Rivera-Feliciano v. Acevedo-Vila*, No. 05-1910, 2005 U.S. Dist. LEXIS 33781, at *3 (D.P.R. Sept. 7, 2005) ("Where a common question of law refers to standardized conduct by defendants toward members of the putative class, a common nucleus of operative fact is typically presented, and the commonality requirement is usually met."). Here, the proposed Settlement Class Members' claims are all based on the *same* legal theories and arise out of the *same* course of conduct—Defendants' alleged misrepresentations and omissions about the safety and efficacy of "ponatinib" and its prospects for approval for front line use by the Food and Drug

---

[5] In support of their motion for class certification, plaintiffs submitted the Expert Report of Chad Coffman (the "Coffman Decl.") ECF No. 198-1.

Administration ("FDA") with a favorable label. The common legal theories and conduct raise many common questions of law or fact, including: (1) whether the federal securities laws were violated by Defendants' alleged acts; (2) whether Defendants made any material misstatements or omissions during the Class Period about the safety and efficacy of ARIAD's development-stage cancer medication, "ponatinib," and its prospects for approval for front line use by the FDA with a "favorable label" for the drug; (3) whether Defendants made their misstatements or misrepresentations with the required scienter; (4) whether the market price of ARIAD's publicly-traded common stock was artificially inflated during the Settlement Class Period due to the alleged false and misleading statements or omissions; and (5) to what extent the members of the Settlement Class sustained damages and the proper measure of those damages. Complaint, ¶ 387.

Courts have repeatedly found that these common issues of law and fact satisfy Rule 23(a)(2)'s commonality requirement. *See In re Boston Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 281 (D. Mass. 2009) (commonality requirement met where common questions included "whether defendants made material misleading statements or omissions, whether defendants acted with the requisite scienter, and whether the proposed class is entitled to a presumption of reliance under the fraud-on-the-market theory"), *aff'd*, 649 F.3d 5 (1st Cir. 2011). The commonality requirement is met.

### 3. The Proposed Settlement Class Representatives' Claims are Typical of Those of the Proposed Settlement Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is fulfilled when the plaintiffs' claims arise from the same course of conduct and are based on the same legal theory as the class claims. *Evergreen*, 275 F.R.D. at 389. However, "[t]ypicality does not require a showing that the named plaintiff's claims are identical to those of the class

members but simply that the claims arise from the same course of events." *Sonus Networks*, 247 F.R.D. at 248; *see also Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 260 (D. Mass. 2005) ("'[I]t is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification.'") (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith*, 903 F.2d 176, 180 (2d Cir. 1990)).

Here, the claims of the proposed Settlement Class Representatives are typical of the claims of other members of the Settlement Class: their claims arise out of the same course of conduct (Defendants' alleged misrepresentations and omissions during the Class Period), are premised on the same legal theory (Defendants violated the Exchange Act), and have caused economic damages in the same or a similar manner. Like all Members of the Settlement Class, the Settlement Class Representatives purchased shares of ARIAD publicly-traded common stock during the Class Period and were allegedly damaged as a result of the alleged material misstatements and omissions. *See* Complaint ¶¶ 27, 29, 384. The typicality requirement is met.

### 4. Settlement Class Representatives Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In the First Circuit, this requirement is met where it appears that: (1) "the interests of the representative party will not conflict with the interests of the class members;" and (2) "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). When plaintiffs have "a sufficient interest in the outcome of the case to ensure vigorous advocacy" and does not have interests "antagonistic to those of the proposed class," the adequacy requirement is met. 1-14A James Wm. Moore et al., *Moore's Federal Practice* ¶ 14A.25[1] (3d ed. 1999).

Settlement Class Representative Gaul purchased 225,000 shares of ARIAD stock for $5,201,496 during the Class Period. ECF No. 24-1 (Gaul Decl.) ¶ 2. Settlement Class Representative Fort Lauderdale Police purchased 1,537 shares on December 14, 2012, also within the Class Period. ECF No. 35-1 (Wenguer Decl.) ¶ 4.

The Settlement Class Representatives have actively supervised and monitored the progress of this litigation and will continue to actively participate in its prosecution and take all necessary steps to ensure that they fulfill their fiduciary obligations as a class representative. ECF No. 24-1 (Gaul Decl.) ¶¶ 3-4; ECF No. 35-1 (Wenguer Decl.) ¶¶ 6-7. They have understood their role and obligations as a class representative and have protected and continue to protect Settlement Class Members' interests. ECF No. 24-1 (Gaul Decl.) ¶¶ 3-4; ECF No. 35-1 (Wenguer Decl.) ¶¶ 6-7. They have actively monitored and supervised experienced counsel who have, among other things: (1) investigated claims; (2) researched and prepared the Complaint; (3) researched and briefed the opposition to Defendants' motion to dismiss, which after being granted was appealed; (4) in connection with the appeal, drafted opening and reply briefs and argued before the First Circuit; (5) vigorously pursued discovery by, among other things, serving discovery requests on Defendants, and participating in conferences with the Court; (6) prepared and filed a class certification motion; and (7) engaged in arm's-length negotiation and mediation leading to this proposed Settlement. Their interests and actions fulfill the adequacy requirement under Rule 23(a)(4).

Second, Court-appointed Plaintiffs' Co-Lead Counsel are amply qualified and experienced and have conducted the action vigorously and effectively on behalf of Settlement Class Representatives and the Settlement Class. It is respectfully submitted that they are among the leading law firms representing plaintiffs in securities class actions in courts throughout the

nation and have extensive experience in successfully prosecuting such actions and have achieved

signification results for its clients and investor classes. *See* ECF No. 199. The adequacy

requirement is met.

**B.      The Requirements of Rule 23(b)(3) Are Satisfied**

In addition to meeting the prerequisites of Rule 23(a), the Court must also find that

common questions of law predominate and that a class action is the superior method of

adjudication. *See* Fed. R. Civ. P. 23(b)(3).

**1.      Common Questions of Law and Fact Predominate**

The predominance requirement "tests whether proposed classes are sufficiently cohesive

to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Predominance is a test

readily met in certain cases alleging . . . securities frau[d]." *Id*. at 625.

Here, the common questions of law and fact set forth above predominate over any

conceivable individual question because Defendants' alleged misconduct affect all Settlement

Class Members in the same manner. Each Settlement Class Member would need to establish the

same facts to prove Defendants' alleged violations of the Exchange Act, that is, whether

Defendants' public statements during the Class Period misrepresented and omitted material facts

about the safety and efficacy of "ponatinib" and its prospects for approval for front line use by

the FDA with a "favorable label"; whether Defendants acted knowingly or with severe

recklessness, in allegedly misrepresenting or omitting those material facts; whether the prices of

ARIAD publicly-traded common stock were artificially inflated during the Class Period due to

the alleged misrepresentations and omissions; and whether Settlement Class Representatives and

Settlement Class Members suffered damages, as well as the appropriate measure thereof.

Moreover, Settlement Class Representatives' Section 10(b) claims invoke the "fraud-on-

the-market" doctrine, which establishes a rebuttable presumption of reliance where a plaintiff

shows "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014) (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 248 n.27 (1988)). Here, ARIAD common stock was listed and actively traded on the NASDAQ, a highly efficient market during the Class Period. Complaint, ¶ 383.

Accordingly, Settlement Class Representatives would be able to present common legal and factual arguments regarding all elements of their claims, including reliance, thus satisfying the predominance requirement of Rule 23(b)(3).

### 2.    A Class Action Is the Superior Method for Resolution of This Controversy

Rule 23(b)(3) also requires that the Court determine that a class action is superior to other possible methods of fairly and efficiently resolving the controversy. Rule 23(b)(3)(A)-(D) sets forth a non-exclusive list of four factors to consider: (1) the class members' interest in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Astrazeneca AB v. UFCW (In re Nexium Antitrust Litig.)*, 777 F.3d 9, 17-18, n.14 (1st Cir. 2015). Here, all of the relevant factors demonstrate the superiority of the class mechanism for adjudicating Settlement Class Members' claims.[6]

---

[6] The fourth superiority consideration—the likely difficulties in managing a class action—is not an issue in a settlement context. "Confronted with a request for settlement-only class certification," however, "a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

First, the interest of Settlement Class Members in individually controlling the prosecution of separate actions is minimal, particularly because the costs and expenses of such individual actions would be prohibitive when weighed against the potential individual recoveries, making it unlikely that many individuals will attempt to bring such claims. *See Swack*, 230 F.R.D. at 273 (recognizing "the very real risk that potential class members with relatively small claims would not have the financial incentives or wherewithal to seek legal redress for their injuries"). Moreover, the burden on the courts from adjudicating potentially thousands of separate actions that arise out of the same facts would be significant. *Id.* ("the piecemeal adjudication of numerous separate lawsuits covering the same or substantially similar issues—*i.e.*, Defendants' allegedly illegal conduct and the impact thereof on the market price of [the Company's shares]— would be an infective allocation of limited court resources.").

Second, Plaintiffs' Co-Lead Counsel are not aware of any pending cases that have been brought against Defendants by class members on an individual basis.

Third, concentrating the litigation of the claims in this forum makes good sense, given the Court's familiarity with the proceedings in this litigation. The Court has already expended judicial resources in determining many contested motions and overseeing this action for nearly four years. Litigation in this Court will also achieve economies of scale, conserve the resources of the judicial system, and avoid the waste and delay of repetitive proceedings and inconsistent adjudications of similar issues and claims. *Vargas v. Spirit Delivery & Distrib. Servs., Inc.*, No. 13 Civ. 12635, 2017 U.S. Dist. LEXIS 43358, at *45-46 (D. Mass. Mar. 24, 2017) (finding superiority and noting that "multiple actions would result in increased expense for the parties and the Court as the result of duplicative discovery, multiple court proceeding"); *see also Garcia v. E.J. Amusements of N.H., Inc.*, 98 F. Supp. 3d 277, 292 (D. Mass. 2015) (finding superiority

where "a class action lawsuit would be a better option than multiple individual actions, coordinated individual actions, consolidated individual actions, test cases, or any of the other known options").[7] Therefore, this is the most desirable forum in which to prosecute this action.

Accordingly, it is respectfully requested that the Court preliminarily certify the Settlement Class for purposes of the Settlement.

## III.   THE PROPOSED NOTICE IS ADEQUATE

As part of the Stipulation, the Parties have negotiated the forms of the Notice and of the Publication Notice to apprise Settlement Class Members of the terms of the Settlement, their rights in connection with the Settlement, and the date of the Settlement Fairness Hearing for final approval by the Court. The Notice, which will be sent by mail to all Settlement Class Members who can be identified with reasonable effort, has been drafted to fully comply with the provisions of the Private Securities Litigation Reform Act of 1995. *See* 15 U.S.C. § 78u-4(a)(7). Along with the Notice, Settlement Class Members will receive a Claim Form. Settlement Class Members must provide the requested information concerning transactions in ARIAD publicly-traded common stock during the Class Period, signed and returned to the Claims Administrator before the claims deadline. The Claims Administrator will process the Claim Forms and then calculate payments in accordance with the Plan of Allocation.

The Parties have agreed to use the traditional methods for notifying Settlement Class Members: by U.S. mail, publication on the Internet, and publication in a national newspaper focusing on investors. Specifically, the Parties have agreed to publish the Publication Notice in

---

[7] The Court's finding of predominance for settlement purposes supports the superiority of the class action mechanism. *Gintis v. Bouchard Transp. Co., Inc.*, 596 F.3d 64, 67-68 (1st Cir. 2010) ("While superiority is a separate base to be touched, it is addressed by many of the considerations that inform a trial court's judgment call about how clearly predominant the common issues must be."); *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 346 (D. Mass. 2003) (finding superiority where "[g]iven the predominance of common questions and evidence . . . resolution by class action would provide substantial savings in time, effort, and expense").

*Investor's Business Daily* and transmit it over *PR Newswire*. Following the entry of the Order for Notice and Hearing, the Claims Administrator will mail the Notice and Claim Form to Settlement Class Members whose names and addresses are provided by ARIAD's transfer agent and to banks and brokerages which typically hold shares on behalf of clients and customers.[8] These methods of notice satisfy the requirements of due process in class actions like this one. *See, e.g.*, *In re StockerYale, Inc.*, No. 1:05cv00177-SM, 2007 U.S. Dist. LEXIS 94004, at \*4, \*7 (D.N.H. Dec. 18, 2007) (finding that due process is satisfied where notice mailed by first class mail to all class members who can be identified with reasonable effort and summary notice is published once in the national edition of *Investor's Business Daily* and on the *PR Newswire*).

Consistent with Federal Rule of Civil Procedure 23(e), upon notification of the Settlement, Settlement Class Members have three choices: (1) approve the Settlement and share in the Settlement proceeds by submitting a valid Claim Form; (2) exclude themselves from the Settlement by "opting out" of the Settlement Class, in which case they will not participate in the Settlement recovery and will retain their right to pursue individual claims against the Defendants; or (3) disapprove of the Settlement, the Plan of Allocation, and/or the attorneys' fee and expense petition by objecting to their terms (objectors may also submit Claim Forms). This Court should find that the Notice and the procedures for its dissemination are reasonably calculated to provide notice of the Settlement to the Settlement Class, comport with Federal Rule of Civil Procedure 23(e), and are adequate.

---

[8] The Order for Notice and Hearing provides that nominees who purchased or otherwise acquired ARIAD common stock on behalf of beneficial owners shall send the Notice and Claim Form to those beneficial owners within seven (7) calendar days of the receipt of such documents, or send a list of the names and addresses of such beneficial owners to the Claims Administrator within seven (7) calendar days of receipt thereof, in which event the Claims Administrator shall promptly mail the Notice and Claim Form to such beneficial owners. Order, ¶ 9. This provision ensures that all beneficial owners ultimately receive the Notice and Claim Form.

**IV.    THE COURT SHOULD ADOPT THE DEADLINES SET FORTH IN THE
         ORDER FOR NOTICE AND HEARING**

To facilitate the orderly resolution of this action, the Parties propose that the Court adopt

the following deadlines governing this Settlement, as set forth in the Order for Notice and

Hearing:

| Event | Proposed Deadline |
|---|---|
| Mailing of Notice (Order, ¶ 9) | on or before ten (10) business days after the entry of the Order for Notice and Hearing ("Notice Date") |
| Publishing of Publication Notice (Order, ¶ 10) | within fourteen (14) calendar days of the Notice Date |
| File Motion for Final Approval of Settlement, Plan of Allocation and Motion for Award of Attorneys' Fees and Expenses (Order, ¶ 17) | no later than thirty-five (35) calendar days before the Settlement Fairness Hearing |
| Submit Requests for Exclusion (Order, ¶ 14) | no later than twenty-one (21) calendar days before the Settlement Fairness Hearing |
| File Objections (Order, ¶ 19) | no later than twenty-one (21) calendar days before the Settlement Fairness Hearing |
| File Reply in Further Support of Motion for Final Approval of Settlement, Plan of Allocation and Motion for Award of Attorneys' Fees and Expenses (Order, ¶ 24) | no later than seven (7) calendar days before the Settlement Fairness Hearing |
| Settlement Fairness Hearing (Order, ¶ 5) | At the Court's convenience, at least ninety-eight (98) calendar days after the entry of the Order for Notice and Hearing |
| Deadline for Claim Forms (Order, ¶ 12) | twenty-eight (28) calendar days after the Settlement Fairness Hearing date |

## **CONCLUSION**

The Parties respectfully request that this Court enter the Order for Notice and Hearing,

submitted herewith, and: (i) certify the Settlement Class for settlement purposes; (ii) find

preliminarily that the Settlement is fair, reasonable, and adequate; and (iii) find that notification

of the terms of the Settlement and of Settlement Class Members' rights in connection therewith

is warranted.

DATED: November 29, 2017

**BERNSTEIN LITOWITZ BERGER & GROSSMAN LLP**

By: ___/s/ John C. Browne_____
      John C. Browne (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
johnb@blbglaw.com

***Co-Lead Counsel for Plaintiffs***


**LABATON SUCHAROW LLP**

By: ____/s/ Jonathan Gardner_____
      Jonathan Gardner (*pro hac vice*)
      Carol C. Villegas (*pro hac vice*)
      Roger W. Yamada *(pro hac vice)*
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
jgardner@labaton.com
cvillegas@labaton.com
ryamada@labaton.com

***Co-Lead Counsel for Plaintiffs***

**MILBERG LLP**

By: ___/s/ Sanford P. Dumain_____
      Sanford P. Dumain (*pro hac vice*)
One Penn Plaza
New York, New York 10119-0165
Tel: (212) 594-5300
Fax: (212) 868-1229
sdumain@milberg.com

***Co-Lead Counsel for Plaintiffs***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 29th day of November, 2017, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

_/s/ Sanford P. Dumain_
Sanford P. Dumain