**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

IN RE ARIAD PHARMACEUTICALS, INC.   )        No. 1:13-cv-12544 (WGY)
SECURITIES LITIGATION                          )

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF <u>ALLOCATION</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................**Error! Bookmark not defined.**

PRELIMINARY STATEMENT ...................................................................................1

PROCEDURAL AND FACTUAL BACKGROUND...................................................2

ARGUMENT..............................................................................................................2

I.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
ADEQUATE AND WARRANTS FINAL APPROVAL....................................................2

      A.      The Settlement Was Reached Following a Thorough Investigation and Arm's-
Length Negotiations and Is Recommended by Plaintiffs' Co-Lead Counsel ......... 4

      B.      Consideration of All Relevant Factors Supports the Approval of the Settlement as
Substantively Fair, Reasonable, and Adequate ...................................................... 6

            1.      Continued Litigation Would Be Complex, Expensive, and Protracted
(*Grinnell* factor 1) ...................................................................................... 6

            2.      The Reaction of the Settlement Class to Date Supports Final Approval
(*Grinnell* factor 2) ...................................................................................... 8

            3.      The Stage of the Proceedings and Amount of Discovery Completed
(*Grinnell* factor 3) ...................................................................................... 8

            4.      The Settlement Class Faces Significant Risks Establishing Liability,
Establishing Damages, and Maintaining the Class Action through the Trial
(*Grinnell* factors 4, 5 and 6)..................................................................... 10

                  (a)   Risks Concerning Liability .............................................. 10

                  (b)   Risks Related to Loss Causation and Damages............................... 12

                  (c)   Risks Concerning Maintaining Class Certification Through Trial... 13

            5.      The Ability of Defendants to Withstand a Greater Judgment (*Grinnell*
factor 7)...................................................................................................... 13

            6.      The Settlement is Fair, Reasonable, and Adequate in Light of the Best
Possible Recovery and of All the Attendant Risks of Litigation (*Grinnell*
factors 8 and 9).......................................................................................... 14

II.     THE PROPOSED SETTLEMENT CLASS SHOULD BE FINALLY
CERTIFIED FOR SETTLEMENT PURPOSES PURSUANT TO RULES 23(A)
AND (B)(3)....................................................................................................................15

III.    THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE, AND
ADEQUATE AND SHOULD BE APPROVED...............................................................16

IV.   THE NOTICE PROVIDED TO THE SETTLEMENT CLASS CONSTITUTES
      THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES AND
      SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS....................18

CONCLUSION.............................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bellifemine v. Sanofi-Aventis U.S. LLC,*
   No. 07 Civ. 2207(JGK), 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) .....................................8

*Bussie v. Allmerica Fin. Corp.,*
   50 F. Supp. 2d 59 (D. Mass. 1999) .................................................................................4, 5, 6

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship,*
   100 F.3d 1041 (1st Cir. 1996) ...........................................................................................2, 3, 4

*City of Providence v. Aeropostale, Inc.,*
   No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014),
   *aff'd sub nom. Arbuthnot v. Pierson,* 607 F. App'x 73 (2d Cir. 2015) ...................................16

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001) ...................................................................................................14

*Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ......................................................................................... *passim*

*Duhaime v. John Hancock Mut. Life Ins. Co.,*
   177 F.R.D. 54 (D. Mass. 1997) ...............................................................................................4

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ...............................................................................................................18

*Gulbankian v. MW Mfrs., Inc.,*
   No. 10-10392-RWZ, 2014 WL 7384075 (D. Mass. Dec. 29, 2014) .........................................5

*Hicks v. Stanley,*
   No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...................................7

*Hochstadt v. Boston Sci. Corp.,*
   708 F. Supp. 2d 95 (D. Mass. 2010) .....................................................................................16

*In re Advanced Battery Techs., Inc. Sec. Litig.,*
   298 F.R.D. 171 (S.D.N.Y. 2014) ...........................................................................................16

*In re ARIAD Pharm., Inc. Sec. Litig.,*
   98 F. Supp. 3d 147, 163 (D. Mass. 2015) .............................................................................12

*In re Cabletron Sys. Sec. Litig.,*
   239 F.R.D. 30 (D.N.H. 2006) ..........................................................................................16, 19

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,*
   216 F.R.D. 197 (D. Me. 2003).................................................................................................4

*In re Giant Interactive Grp., Inc.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ....................................................................................17

*In re Lupron® Mktg. & Sales Practices Litig.*,
   228 F.R.D. 75 (D. Mass. 2005), *aff'd*, 677 F.3d 21 (1st Cir. 2012)..................................3, 4, 5

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)....................................14

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   588 F.3d 24 (1st Cir. 2009)..............................................................................................4

*In re Puerto Rican Cabotage Antitrust Litig.*,
   815 F. Supp. 2d 448 (D.P.R. 2011)....................................................................................9

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52 (D. Mass. 2005) ................................................................................3, 5, 7, 14

*In re StockerYale, Inc. Sec. Litig.*,
   No. 1:05-cv-00177, 2007 WL 4589772 (D.N.H. Dec. 18, 2007) ...............................3, 6, 9, 19

*In re Sturm, Ruger & Co., Inc. Sec. Litig.*,
   No. 3:09 cv 1293 (VLB), 2012 WL 3589610 (D. Conn. Aug. 20, 2012)................................14

*In re Tyco Int'l, Ltd.*,
   535 F. Supp. 2d 249 (D.N.H. 2007)..............................................................................3, 13, 16

*Lazar v. Pierce*,
   757 F.2d 435 (1st Cir. 1985) ............................................................................................4

*Medoff v. CVS Caremark Corp.*,
   No. 09-cv-554-JNL, 2016 WL 632238 (D.R.I. Feb. 17, 2016) ...............................................15

*New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*,
   602 F. Supp. 2d 277 (D. Mass. 2009) ...................................................................................3

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972).............................................................................................14

*P.R. Dairy Farmers Ass'n v. Pagan*,
   748 F.3d 13 (1st Cir. 2014) ...............................................................................................4

*Peters v. Nat'l R.R. Passenger Corp.*,
   966 F.2d 1483 (D.C. Cir. 1992) .......................................................................................18

*Rolland v. Cellucci*,
   191 F.R.D. 3 (D. Mass. 2000).............................................................................................6

*Schwartz v. TXU Corp.*,
   No. 3:02-CV-2243, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .........................................16

*Voss v. Rolland,*
 592 F.3d 242 (1st Cir. 2010)..............................................................................2

**STATUTES**

Exchange Act ...........................................................................................................9

PSLRA, 15 U.S.C. § 78u-4(a)(7)..........................................................................18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a) ......................................................................................1, 15, 16

Fed. R. Civ. P. 23(b)(3) .................................................................................1, 15, 16

Fed. R. Civ. P. 23(c)(1)(C) ...................................................................................13

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................18

Fed. R. Civ. P. 23(e) ..........................................................................................1, 2

Fed. R. Civ. P. 23(e)(1) .........................................................................................18

Fed. R. Civ. P. 23(e)(2) ...........................................................................................2

## PRELIMINARY STATEMENT

Pursuant to Rules 23(a), (b)(3) and (e) of the Federal Rules of Civil Procedure, the City of Fort Lauderdale Police & Fire Retirement System and William A. Gaul (the "Settlement Class Representatives"), on behalf of themselves and the proposed Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement of this class action, approval of the Plan of Allocation of the Net Settlement Fund, and final certification of the Settlement Class.[1]

As set forth herein and in the accompanying Joint Declaration,[2] the Settlement was negotiated on an informed basis and under the direct supervision of a qualified mediator.  As set forth in the Stipulation, in exchange for the payment of $3.5 million in cash for the benefit of the Settlement Class, the Settlement will release all Released Defendant Parties from all Settled Claims.  The Settlement is not "claims made" and all proceeds of the Settlement, after the deduction of Court-approved fees and costs, will be distributed to eligible claimants.  There is also no reversion to Defendants.  Given the facts, the applicable law, and the risk and expense of continued litigation, the Settlement Class Representatives and Plaintiffs' Co-Lead Counsel submit that the proposed Settlement is fair, reasonable and adequate, represents a very favorable result, and is in the best interests of the Settlement Class.  The Settlement recovers a significant amount of the Settlement Class's maximum estimated damages for the four-day Class Period that the First Circuit upheld. Based on the estimate of aggregate damages by the Settlement Class

---

[1] Capitalized terms not otherwise defined herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement dated November 29, 2017 (the "Stipulation") (ECF No. 236).

[2] The Joint Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*, the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and a description of the services that Plaintiffs' Co-Lead Counsel provided for the benefit of the Settlement Class.

Representatives' consulting damages expert, which totaled approximately $10.5 million, the Settlement represents approximately 33.3% of maximum recoverable class-wide aggregate damages, an outstanding result particularly when compared to the risks that continued litigation might result in a vastly smaller recovery, or no recovery at all.  *See* Joint Decl., ¶¶ 6, 102.

For all the reasons discussed herein and in the Joint Declaration, it is respectfully submitted that the Cou rt should approve the Settlement as fair, reasonable, and adequate; affirm its certification of the class for settlement purposes only; and approve the Plan of Allocation.

## PROCEDURAL AND FACTUAL BACKGROUND

The Court is respectfully referred to the accompanying Joint Declaration for a full discussion of the factual background and procedural history of the Action, the extensive litigation efforts of Plaintiffs' Co-Lead Counsel, the mediation leading to this Settlement, and the reasons why the Settlement and Plan of Allocation are fair, reasonable, and adequate and should be approved.

## ARGUMENT

### I.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval. The Settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see Voss v. Rolland,* 592 F.3d 242, 251 (1st Cir. 2010); *City P'ship Co. v. Atl. Acquisition Ltd. P'ship,* 100 F.3d 1041, 1043 (1st Cir. 1996). Courts "enjoy great discretion to 'balance [a settlement's] benefits and costs' and apply this general standard." *Voss,* 592 F.3d at 251. [3]

---

[3] Citations are omitted and emphasis is added throughout unless otherwise indicated.

Courts generally consider both "the negotiating process by which the settlement was reached and the substantive fairness of the terms of the settlement compared to the result likely to be reached at trial." *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 72 (D. Mass. 2005) (quoting *In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 216 F.R.D. 197, 206 (D. Me. 2003)).  For courts in the First Circuit, the evaluation of the settlement "requires a wide-ranging review of the overall reasonableness of the settlement that relies on neither a fixed checklist of factors nor any specific litmus test." *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007); *see also New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.,* 602 F. Supp. 2d 277, 280 (D. Mass. 2009) ("The First Circuit has not established a fixed test for evaluating the fairness of a settlement."). However, many courts in this Circuit have considered the following factors, initially set forth by the Second Circuit in *Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974), in conducting their analysis:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendants risks of litigation.

*First Databank,* 602 F. Supp. 2d at 280-81 (quoting *Grinnell,* 495 F.2d at 463); *Relafen,* 231 F.R.D. at 72 (same); *In re Lupron® Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93-94 (D. Mass. 2005) (same), *aff'd*, 677 F.3d 21 (1st Cir. 2012); *In re StockerYale, Inc. Sec. Litig.,* No. 1:05-cv-00177, 2007 WL 4589772, at *3 (D.N.H. Dec. 18, 2007) (same).

The determination of whether a settlement is fair, reasonable, and adequate is committed to the court's sound discretion. *See City P'ship,* 100 F.3d at 1043-44.  In general, courts refrain from

"prejudg[ing] the merits of the case" or "second-guess[ing] the settlement." *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 211 (D. Me. 2003). Instead, the court's role is limited to "determin[ing] if the parties' conclusion is reasonable." *Id.* As one court noted:

> Any settlement is the result of a compromise — each party surrendering something in order to prevent unprofitable litigation, and the risks and costs inherent in taking litigation to completion. A district court, in reviewing a settlement proposal, need not engage in a trial of the merits, for the purpose of settlement is precisely to avoid such a trial.

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997).[4]

In evaluating the Settlement, the Court must also consider the strong public policy favoring settlement, particularly in class actions. *See P.R. Dairy Farmers Ass'n v. Pagan,* 748 F.3d 13, 20 (1st Cir. 2014) (noting the 'strong public policy in favor of settlements'); *Nat'l Ass'n of Chain Drug Stores*, 582 F.3d at 44 ("policy encourages settlements"). This is especially so in the context of complex class action litigation. *See In re Lupron*, 228 F.R.D. at 88 ("[T]he law favors class action settlements."); *see also Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985) ("[W]e should point to the overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved.").

### A. The Settlement Was Reached Following a Thorough Investigation and Arm's-Length Negotiations and Is Recommended by Plaintiffs' Co-Lead Counsel

Where the parties have negotiated a settlement at arm's-length and have conducted sufficient discovery, the court should presume that the settlement is reasonable. *See In re Pharm. Indus. Average Wholesale Price Litig.,* 588 F.3d 24, 32-33 (1st Cir. 2009); *City P'ship,* 100 F.3d at 1043;

---

[4] "In evaluating the fairness of the Settlement, the Court does not rule on the merits of either the Class's claims or [defendant's] multiple defenses." *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 76 (D. Mass. 1999) (citing *Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers v. Unisys Corp.*, 858 F. Supp. 1243, 1266 (E.D.N.Y. 1994) (approval of settlement does not require adjudication of merits)).

*Relafen,* 231 F.R.D. at 71-72; *Lupron,* 228 F.R.D. at 93; *Gulbankian v. MW Mfrs., Inc.,* No. 10-10392-RWZ, 2014 WL 7384075, at \*2 (D. Mass. Dec. 29, 2014). Courts accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *Gulbankian,* 2014 WL 7384075, at \*3.

A presumption of reasonableness is appropriate here. The Settlement was achieved after the Settlement Class Representatives and Plaintiffs' Co-Lead Counsel were fully informed about the strengths and weaknesses of the case. The Action was prosecuted for more than three and a half years and settled only after Plaintiffs' Counsel overcame multiple legal and factual challenges, including an appeal to the First Circuit. Among other efforts, Plaintiffs' Counsel conducted a comprehensive investigation into the class's claims; researched and prepared a detailed consolidated complaint; briefed a thorough opposition to defendants' motions to dismiss; appealed the Court's order on defendants' motions to dismiss; moved for class certification; opposed Defendants' motion for Judgment on the Pleadings; began discovery including obtaining and analyzing documents produced by Defendants; and engaged in a hard-fought settlement process with experienced defense counsel. *See* Joint Decl., ¶ 83; see also Joint Decl., ¶¶ 5, 16.

The case was at an advanced stage and Plaintiffs' Co-Lead Counsel were well informed about its strengths and weaknesses. Accordingly, the Settlement is procedurally fair and entitled to a presumption of reasonableness. *See Relafen,* 231 F.R.D. at 71-72; *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("[S]ettlement negotiations . . . conducted at arms' length over several months . . . support 'a strong initial presumption' of the Settlement's substantive fairness.").

The judgment of experienced and well-informed class counsel should be accorded significant weight by the Court. *See Rolland v. Cellucci,* 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight"); *Bussie,* 50 F. Supp. 2d at 77 ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsel, who are experienced attorneys and have represented to the Court that they believe the settlement provides to the Class relief that is fair, reasonable and adequate."). Plaintiffs' Co-Lead Counsel have extensive experience in securities class action litigation and were well-informed about the facts of the case as a result of their investigation and discovery at the time the Settlement was reached.  Based on their experience and close knowledge of the facts and applicable law, Plaintiffs' Co-Lead Counsel believe that the Settlement is in the best interests of the Settlement Class. *See* Joint Decl., ¶ 56.

## B.      Consideration of All Relevant Factors Supports the Approval of the Settlement as Substantively Fair, Reasonable, and Adequate

Consideration of all the relevant *Grinnell* factors strongly supports approval of the Settlement as fair, reasonable and adequate.

### 1.      Continued Litigation Would Be Complex, Expensive, and Protracted (*Grinnell* factor 1)

The complexity of this case and the substantial expense and delay that would result if the Settlement Class Representatives sought to achieve a litigated verdict both weigh strongly in favor of final approval of the Settlement. *See StockerYale,* 2007 WL 4589772, at *3 (noting that this factor "captures the probable costs, in both time and money, of continued litigation").

As discussed in the Joint Declaration, in order to recover any damages at trial, the Settlement Class Representatives would have to prevail at many stages in the litigation—namely, a pending motion for class certification, motions for summary judgment, *Daubert* motions

directed at experts, and then trial; and, even if the Class Representatives prevailed at those stages, in the appeals that would likely follow. This was a complex securities fraud case within the pharmaceutical context, which raised numerous nuanced factual and legal issues. There were significant risks attendant to the continued prosecution of the Action, and no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all. *See* Joint Decl., ¶ 68. Moreover, regardless of which side prevailed at trial, appeals likely would ensue. *See Relafen,* 231 F.R.D. at 72 ("[I]n light of the high stakes involved, 'an appeal is certain to follow regardless of the outcome at trial.'").

Were this Settlement not achieved, and even if the Settlement Class Representatives prevailed at trial, the Settlement Class Representatives and Plaintiffs' Co-Lead Counsel faced potentially years of costly and risky trial and appellate litigation against Defendants, with ultimate success far from certain and the prospect of no recovery significant. *See* Joint Decl., ¶¶ 67-68, 100-102.

The present value of a certain recovery at this time, compared to the chance for a greater one down the road at significant additional cost, supports approval of a settlement that eliminates the expense and delay of continued litigation, as well as the significant risk that the Settlement Class could receive no recovery. Indeed the maximum potential damages of $10.5 million could have been quickly overcome by the costs of continued litigation. By contrast, the Settlement offers the opportunity to provide definite compensation to the Settlement Class now. *See Hicks v. Stanley,* No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."). Thus, the likely duration, complexity, and

expense of further litigation supports a finding that the Settlement is fair and weighs in favor of final approval.

### 2. The Reaction of the Settlement Class to Date Supports Final Approval (*Grinnell* factor 2)

Although the April 19, 2018 deadline to file objections has not yet passed, as of the date of this motion, there have not been any objections to the Settlement or requests for exclusion. *See* Joint Decl., ¶ 55. The absence of meritorious objections or investors opting out of a settlement would provide evidence of class members' approval of the terms of a settlement.

### 3. The Stage of the Proceedings and Amount of Discovery Completed (*Grinnell* factor 3)

This *Grinnell* factor looks to the stage of the proceedings and the amount of discovery completed to consider whether the plaintiffs "obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Bellifemine v. Sanofi-Aventis U.S. LLC,* No. 07 Civ. 2207(JGK), 2010 WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010).

Plaintiffs' Co-Lead Counsel's extensive knowledge of the merits and potential weaknesses of the asserted claims supports the Settlement in this case. The Parties reached an agreement in principle to settle the Action in May 2017—more than three-and-a-half years after the commencement of the Action—and only after extensive litigation before this Court and the U.S. Court of Appeals for the First Circuit. Plaintiffs' Counsel had (i) conducted a thorough and wide-ranging investigation concerning the allegedly fraudulent misrepresentations made by Defendants, which included a review and analysis of: documents filed publicly by the Company with the SEC; press releases, news articles, and other public statements, issued by or concerning the Company, Defendants, and ponatinib; research reports issued by financial analysts concerning the Company and ponatinib; information concerning clinical trials related to ponatinib conducted by the Company and

submitted to the FDA; and interviews with 38 potential witnesses, who were either former ARIAD employees or other persons with relevant knowledge; (ii) prepared and filed a detailed consolidated complaint, which included the accounts of seven confidential witnesses; (iii) researched and drafted an opposition to the comprehensive motions to dismiss the consolidated complaint filed by Defendants and the underwriter defendants; (iv) participated in oral argument on the motions to dismiss; (v) appealed the Court's order granting the motions to dismiss, which resulted in a partial reversal with respect to the Exchange Act claims during an abbreviated four-day class period and the case being remanded; (vi) moved for class certification; (vii) successfully opposed Defendants' Motion for Judgment on the Pleadings; (viii) engaged in fact discovery, which included Plaintiffs' Counsel's analysis of documents produced by Defendants; (ix) conferred with experts on damages, insider trading and loss causation issues, as well as a pharmaceutical industry expert; and (x) engaged in extensive mediation efforts with former Judge Faith S. Hochberg (Ret.) of the United States District Court for the District of New Jersey that included the preparation of mediation briefs, a full-day mediation session, and extensive subsequent negotiations. *See* Joint Decl., ¶ 5.

Plaintiffs' Co-Lead Counsel and Settlement Class Representatives have had a sufficient opportunity to assess and develop the merits of their case. They are knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement. *See, e.g., StockerYale,* 2007 WL 4589772, at *3 (This factor supported settlement approval where "counsel had the benefit of information obtained through document discovery and its extensive own investigation."); *In re Puerto Rican Cabotage Antitrust Litig.,* 815 F. Supp. 2d 448, 474 (D.P.R. 2011) (Even where formal discovery had not occurred, counsel's investigation and informal discovery provided "sufficient information to make a well informed decision.").

**4. The Settlement Class Faces Significant Risks Establishing Liability, Establishing Damages, and Maintaining the Class Action through the Trial (*Grinnell* factors 4, 5 and 6)**

While Plaintiffs' Co-Lead Counsel believe that the claims asserted against Defendants have merit, they recognize that there were, at the time of settlement, significant risks facing the Settlement Class Representatives with respect to establishing both liability and damages during the abbreviated four day class period. Plaintiffs' Co-Lead Counsel also realize that the Settlement Class Representatives faced considerable risks and obstacles to achieving a greater recovery, were the case to continue. *See* Joint Decl., ¶ 56.

**(a) Risks Concerning Liability**

As the case progressed, Defendants would continue to argue that the Settlement Class Representatives could not prove that the challenged statements summarized in the December 11, 2012 Cowen Report, of which there were only two, were materially false and misleading when made. *See* Joint Decl., ¶ 57. While the First Circuit found that the Complaint sufficiently pled that statements made in the December 11, 2012 Cowen Report regarding the Defendants' "optimism" about the prospects of FDA approval of ponatinib with a "favorable label" were misleading, Defendants would argue and seek to prove, among other things, that the Company's optimism was in fact justified given that the FDA approved ponatinib and gave it a favorable label for patients who were "resistant or intolerant to prior tyrosine kinas inhibitor therapy." Defendants would also argue that the statements about the scope of FDA approval were truthful because Defendants were referring to the favorability of ponatinib's label with respect to indication, not safety. *See* Joint Decl., ¶ 58.

Defendants would also argue that the statement that "pancreatitis" with a 5% incidence rate "is the most prevalent" serious adverse event associated with ponatinib was accurate, notwithstanding the argument that serious "arterial occlusive or thromboembolic events"

occurred in 8% of patients. Defendants would seek to establish that the 8% incidence rate represented an aggregation of multiple distinct adverse events and was not an appropriate comparison. The Cowen Report also contained an accurate breakdown of individual adverse events. *See* Joint Decl., ¶ 59. Moreover, Defendants would likely attack the premise that the adverse events were even caused by ponatinib, instead arguing that they were the result of a very sick drug-trial population. There were significant challenges to proving that in this patient population, events were caused by the drug and not some other underlying medical problems within already very sick patients. *See* Joint Decl., ¶ 60.

Complex and subtle scientific evidence, presented through multiple dueling experts' testimony, would have been needed to establish the falsity and materiality of these statements and there was no certainty that the jury, or the Court at summary judgment, would have credited Settlement Class Representatives' experts' views. Thus, the Settlement Class Representatives faced a significant risk that the Court or a jury could have concluded that one or both of these statements were not false or misleading—eliminating the possibility of a recovery. *See* Joint Decl., ¶ 61.

Defendants would have also likely sought to prove that they did not even make these alleged misstatements, which were in an analyst report after a meeting with Defendants, and that the Settlement Class Representatives could not factually or legally attribute them to the Defendants. *See* Joint Decl., ¶ 62.

Defendants would also continue to argue that the Settlement Class Representatives would not be able to prove that any of the Defendants acted with scienter, which is generally the most difficult element of a securities fraud claim for a plaintiff to prove. Defendants had numerous scienter arguments that posed very significant hurdles to proving that they acted with an intent to

commit securities fraud or with severe recklessness. In addition to arguments relating to planned trading to undercut profit motive, Defendants would likely argue that "the fact that ARIAD was under the close supervision of the FDA . . . cuts strongly against any inference that ARIAD was acting recklessly in hiding events from investors." *In re ARIAD Pharm., Inc. Sec. Litig.*, 98 F. Supp. 3d 147, 163 (D. Mass. 2015). *See* Joint Decl., ¶ 63. Proving scienter within the context of pharmaceutical development is a very complex, nuanced, and evidence intensive process, which would have presented significant challenges here. There was no certainty that the jury would have ultimately credited Settlement Class Representatives' theories of the case and evidence concerning scienter over Defendants' counter-evidence. *See* Joint Decl., ¶ 64.

### (b) Risks Related to Loss Causation and Damages

Even assuming that Class Representatives overcame the above risks and successfully established liability, they faced additional challenges in terms of establishing loss causation and ultimately proving damages. The First Circuit shortened the Class Period to just a few days, with only two alleged misleading statements remaining and one corrective disclosure on December 14, 2012. *See* Joint Decl., ¶ 65.

The Settlement Class Representatives' damages expert has estimated maximum aggregate damages during the Settlement Class Period, based on the single disclosure, of just approximately $10.5 million. However, proving loss causation in a securities fraud case is notoriously difficult and exacting—boiling down to a "battle of the experts," in which one cannot predict which expert a jury will find more persuasive. If Defendants were able to successfully rebut plaintiffs' expert's testimony and eliminate the alleged disclosure or cast doubt on loss causation, damages would have been eviscerated. *See* Joint Decl., ¶ 66. And as the case proceeded to trial and post-trial proceedings, plaintiffs' litigation expenses could have easily consumed the bulk of any awarded damages—assuming a verdict was upheld on appeal. *See*

Joint Decl., ¶ 67. There can be no certainty as to which expert's view would be credited by the jury and who would prevail at trial in this "battle of the experts," and accordingly, this created a significant level of litigation risk. *See Tyco,* 535 F. Supp. 2d at 260-61 ("[E]ven if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages.").

To recover any damages at trial, the Settlement Class Representatives would have to prevail at many stages in the litigation—a pending motion for class certification, motions for summary judgment, *Daubert* motions directed at experts, and then trial and, even if the Class Representatives prevailed at those stages, in the appeals that would likely follow. At each of these stages, there would be significant risks attendant to the continued prosecution of the Action, and no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all. *See* Joint Decl., ¶ 68.

### (c) Risks Concerning Maintaining Class Certification Through Trial

Plaintiffs' motion for class certification was pending at the time the Parties agreed to settle. While the Settlement Class Representatives believe they would prevail in a contested class certification proceeding and that a class would be certified for the current class period, Defendants would likely have continued to challenge class certification, especially if plaintiffs had sought to enlarge the class period. Decertification before trial or on appeal after trial would remain a significant risk. *See* Joint Decl., ¶ 69; Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment").

### 5. The Ability of Defendants to Withstand a Greater Judgment (*Grinnell* factor 7)

While it is possible Defendants could withstand a greater judgment than the Settlement represented here, "a defendant is not required to empty its coffers before a settlement can be

found adequate." *In re Sturm, Ruger & Co., Inc. Sec. Litig.,* No. 3:09 cv 1293 (VLB), 2012 WL 3589610, at *7 (D. Conn. Aug. 20, 2012) (quoting *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008)). This factor, standing alone, is not sufficient to preclude a finding of substantive fairness where, as here, the other factors weigh heavily in favor of approving a settlement. *See D'Amato v. Deutsche Bank,* 236 F.3d 78, 86 (2d Cir. 2001).

> **6.     The Settlement is Fair, Reasonable, and Adequate in Light of the Best Possible Recovery and of All the Attendant Risks of Litigation (*Grinnell* factors 8 and 9)**

The Court must consider the reasonableness of the Cash Settlement Amount in light of the possible recovery in the Action and risks of the Action. The issue is not whether the Settlement represents the best possible recovery, but how the Settlement relates to the strengths and weaknesses of the case. Thus, the Court must "consider and weigh the nature of the claim[s], the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell,* 495 F.2d at 462. Courts agree that the determination of a "reasonable" settlement "is not susceptible of a mathematical equation yielding a particularized sum." *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 130 (S.D.N.Y. 1997), *aff'd,* 117 F.3d 721 (2d Cir. 1997); *accord Relafen,* 231 F.R.D. at 73 ("A high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes . . ."). Instead, "in any case there is a range of reasonableness with respect to a settlement. . . ." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972); *Relafen,* 231 F.R.D. at 73.

The proposed $3.5 million cash settlement is well within the range of reasonableness under the circumstances so as to warrant final approval of the Settlement. Based on the estimate of aggregate damages by the Settlement Class Representatives' consulting damages expert, which totaled approximately $10.5 million, the Settlement represents approximately 33.3% of

maximum recoverable class-wide aggregate damages, an outstanding result particularly when compared to the risks that continued litigation might result in a vastly smaller recovery, or no recovery at all. *See* Joint Decl., ¶ 6. This is particularly true when considered in view of the substantial risks and obstacles to recovery if the Action were to continue through class certification, summary judgment, to trial, and through likely post-trial motions and appeals. *See, e.g., Medoff v. CVS Caremark Corp.*, No. 09-cv-554-JNL, 2016 WL 632238, at *6-7 (D.R.I. Feb. 17, 2016) (court approved $48 million settlement representing approximately 5.33% of estimated recoverable damages and noting that this is "well above the median percentage of settlement recoveries in comparable securities class action cases"). *See* Joint Decl., ¶ 102.

When all the *Grinnell* factors are considered, the proposed Settlement is fair, reasonable, and adequate and provides a certain outcome in the best interests of the Settlement Class. Plaintiffs' Co-Lead Counsel have weighed the strengths and weaknesses of the relevant claims, defenses, and likelihood of recovery and, after extensive arm's-length negotiations through a mediator, reached this Settlement. Under these circumstances, the Settlement Class Representatives respectfully submit that the Settlement should be finally approved.

## II.     THE PROPOSED SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED FOR SETTLEMENT PURPOSES PURSUANT TO RULES 23(A) AND (B)(3)

In presenting the proposed Settlement to the Court for preliminary approval, the Settlement Class Representatives requested, for purposes of the Settlement only, that the Court certify the Settlement Class under Rules 23(a) and (b)(3). In its Order for Notice and Hearing, this Court certified the Settlement Class. *See* ECF No. 245, ¶¶ 2-4. Nothing has changed to alter the propriety of the Court's certification. For all the reasons stated in Plaintiffs' Memorandum of Law in Support of Joint Motion for Preliminary Approval of Proposed Class Action Settlement (ECF No. 235), incorporated herein by reference, the Settlement Class Representatives now request that the Court

reaffirm its determinations in the Order for Notice and Hearing and finally certify the Settlement Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3), appoint the City of Fort Lauderdale Police & Fire Retirement System and William A. Gaul as Settlement Class Representatives, and appoint Plaintiffs' Co-Lead Counsel Bernstein Litowitz Berger & Grossmann LLP, Labaton Sucharow LLP, and Milberg Tadler Phillips Grossman LLP as Settlement Class Counsel.

## III.   THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate. *See Tyco,* 535 F. Supp. 2d at 262 ("Like the settlement itself, the plan of allocation must be fair, reasonable, and adequate."); *Hochstadt v. Boston Sci. Corp.,* 708 F. Supp. 2d 95, 109 (D. Mass. 2010) (same). A plan of allocation is fair and reasonable as long as it has a "reasonable, rational basis." *City of Providence v. Aeropostale, Inc.,* No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014) ("A plan of allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."), *aff'd sub nom. Arbuthnot v. Pierson,* 607 F. App'x 73 (2d Cir. 2015).

A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable, but the plan "need not necessarily treat all class members equally." *Schwartz v. TXU Corp.*, No. 3:02-CV-2243, 2005 WL 3148350, at *23 (N.D. Tex. Nov. 8, 2005). A reasonable plan of allocation may consider "the strengths and weaknesses of the claims of the various types of class members." *In re Cabletron Sys. Sec. Litig.,* 239 F.R.D. 30, 35 (D.N.H. 2006).

In addition, in determining whether a plan of allocation is fair and reasonable, courts give great weight to the opinion of experienced counsel. *See In re Advanced Battery Techs., Inc. Sec.*

*Litig.,* 298 F.R.D. 171, 180 (S.D.N.Y. 2014) ("When evaluating the fairness of a Plan of Allocation, courts give weight to the opinion of qualified counsel."); *see also In re Giant Interactive Grp., Inc.,* 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel.").

Here, the proposed Plan of Allocation, which was developed with the assistance of the Settlement Class Representatives' consulting damages expert, and provides a fair and reasonable method for the distribution of the Net Settlement Fund to Settlement Class Members who submit Claim Forms that are approved for payment by the Court. Under the Plan of Allocation, a Settlement Class Member's claim will be calculated for each purchase or acquisition of ARIAD common stock during the Settlement Class Period that is listed in the Settlement Class Member's Claim Form and for which adequate documentation is provided. Calculation of Recognized Claims will depend upon several factors, including when the Authorized Claimant purchased shares during the Class Period and whether these shares were sold during the Class Period, and if so, when. Authorized Claimants will receive their *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's total Recognized Claim compared to the aggregate Recognized Claims of all Authorized Claimants. The Net Settlement Fund will be allocated among Authorized Claimants on a *pro rata* basis based on the relative size of their aggregate claims. *See* Joint Decl., ¶¶ 7, 70-74.

Plaintiffs' Co-Lead Counsel submit that the Plan of Allocation fairly and reasonably allocates the proceeds of the Net Settlement Fund among Settlement Class Members based on the losses they suffered on transactions in ARIAD common stock attributable to the conduct alleged. *See* Joint Decl., ¶¶ 71-73, 77. Moreover, the Plan of Allocation is set forth in the Notice,

and to date no objections to the Plan of Allocation have been received from any Class Members. *See* Joint Decl., ¶¶ 71, 76.

The proposed Plan of Allocation is fair and reasonable, and should be finally approved by the Court.

## IV. THE NOTICE PROVIDED TO THE SETTLEMENT CLASS CONSTITUTES THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES AND SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The purpose of the notice is to "afford members of the class due process which, in the context of the [R]ule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.,* 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173-74 (1974)). A notice program must provide the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See Eisen,* 417 U.S. at 173 (citing Fed. R. Civ. P. 23(c)(2); emphasis omitted).

Both the substance of the Notice and the method of its dissemination to potential Settlement Class Members satisfied these standards. The Court-approved Notice includes all the information required by Federal Rule of Civil Procedure 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Settlement Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) an explanation of the reasons why the parties are proposing the Settlement; (vi) a statement indicating the attorneys' fees and expenses that will be sought; (vii) a description of Settlement Class Members' right to opt out of the Settlement Class or object to

the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Settlement Class Members. Joint Decl., ¶ 51

The Court-approved Notice program has been implemented by Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the third-party claims administrator approved by the Court, under the supervision of Plaintiffs' Co-Lead Counsel. The Court is respectfully referred to the accompanying Joint Declaration (which includes the Declaration of Alexander Villanova Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Mailing Decl." or "Mailing Declaration")) for a full discussion of the implementation of the notice program to date. *See* Joint Decl., ¶¶ 50-55.

The Notice program used the traditional methods for notifying Settlement Class Members: by U.S. mail, publication on the Internet, and publication in a national newspaper focusing on investors. These methods of notice satisfy the requirements of due process in class actions like this one. *See, e.g.*, *StockerYale*, 2007 WL 4589772, at *1-2 (finding that notice mailed by first class mail to all class members who can be identified with reasonable effort and summary notice published in the national edition of *Investor's Business Daily* and on the *PR Newswire* constituted the best notice practicable under the circumstances and satisfied due process); *Cabletron,* 239 F.R.D. at 35-36.

## CONCLUSION

For all the foregoing reasons, Settlement Class Representatives respectfully request that the Court: (i) grant final approval of the Settlement and Plan of Allocation; and (ii) reaffirm its determination to finally certify the Settlement Class for purposes of carrying out the Settlement. A proposed form of final order and judgment will be filed with Settlement Class

Representatives' reply papers on May 3, 2018, after the deadlines for objecting and seeking exclusion have passed.

DATED: April 5, 2018                              Respectfully submitted,


**BERMAN TABACCO**                               **MILBERG TADLER PHILLIPS**
Steven J. Buttacavoli (BBO # 651440)             **GROSSMAN LLP**
1 Liberty Square
Boston, Massachusetts 02109                      By: */s/ Sanford P. Dumain*
Telephone: (617) 542-8300                              Sanford P. Dumain (*pro hac vice*)
Facsimile: (617) 542-1194                        One Penn Plaza, Suite 1920
sbuttacavoli@bermantabacco.com                   New York, NY 10119
                                                 Tel: (212) 594-5300
*Liaison Counsel for Plaintiffs*                 Fax: (212) 868-1229
                                                 sdumain@milberg.com

                                                 *Co-Lead Counsel for Plaintiffs*

                                                 **BERNSTEIN LITOWITZ BERGER &**
                                                 **GROSSMANN LLP**

                                                 By: */s/ John C. Browne*
                                                       John C. Browne (*pro hac vice*)
                                                 1251 Avenue of the Americas
                                                 New York, NY 10020
                                                 Tel: (212) 554-1400
                                                 Fax: (212) 554-1444
                                                 johnb@blbglaw.com

                                                 *Co-Lead Counsel for Plaintiffs*

                                                 **LABATON SUCHAROW LLP**

                                                 By: */s/ Jonathan Gardner*
                                                       Jonathan Gardner (*pro hac vice*)
                                                 140 Broadway
                                                 New York, NY 10005
                                                 Tel: (212) 907-0700
                                                 Fax: (212) 818-0477
                                                 jgardner@labaton.com

                                                 *Co-Lead Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of April, 2018, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

*/s/ Sanford P. Dumain*
Sanford P. Dumain