**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

IN RE ARIAD PHARMACEUTICALS, INC.   )      No. 1:13-cv-12544 (WGY)
SECURITIES LITIGATION                  )

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' CO-LEAD COUNSEL'S MOTION FOR AN AWARD OF**
**ATTORNEYS' FEES AND PAYMENT OF LITIGATION EXPENSES**

# **TABLE OF CONTENTS**

Page

Table of Authorities ........................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................2

ARGUMENT .....................................................................................................................4

I.      PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS'
        FEES FROM THE COMMON FUND...................................................................4

II.     THE REQUESTED FEES ARE REASONABLE UNDER EITHER THE
        PERCENTAGE-OF-THE-FUND METHOD OR THE LODESTAR METHOD .............5

        A.      The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-
                the-Fund Method....................................................................................................5

        B.      The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method .......7

III.    FACTORS CONSIDERED BY COURTS IN THE FIRST CIRCUIT CONFIRM
        THAT THE REQUESTED FEE IS FAIR AND REASONABLE...................................9

        A.      The Amount of the Recovery Supports the Requested Fee ...................................10

        B.      The Skill and Experience of Counsel Support the Requested Fee........................11

        C.      The Complexity and Duration of the Litigation Support the Requested Fee ........12

        D.      The Risk of Non-Payment Was Extremely High In This Case ............................13

        E.      The Amount of Time Devoted to the Litigation Supports the Requested Fee.......15

        F.      Awards in Similar Cases Support The Requested Fee..........................................16

        G.      Public Policy Considerations Support The Requested Fee...................................16

        H.      Settlement Class Representatives Have Approved the Requested Fee..................16

        I.      The Reaction of the Settlement Class to Date Supports the Requested Fee..........17

IV.     THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY
        TO ACHIEVE THE BENEFIT OBTAINED ....................................................................17

V.      THE SETTLEMENT CLASS REPRESENTATIVES SHOULD BE AWARDED
        THEIR REASONABLE COSTS AND EXPENSES PURSUANT TO THE PSLRA......19

CONCLUSION..................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985).................................................................................5, 16

*Bennett v. Roark Capital Grp., Inc.*,
  No. 2:09-CV-00421-GZS, 2011 WL 1703447 (D. Me. May 4, 2011).....................................6

*Bezdek v. Vibram USA, Inc.*,
  79 F. Supp. 3d 324 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015).................................9

*Blum v. Stenson*,
  465 U.S. 886 (1984).................................................................................5

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).................................................................................4

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*,
  752 F.3d 82 (1st Cir. 2014)...........................................................................14

*In re Charter Commc'ns. Inc. Sec. Litig.*,
  02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) .........................................20

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132 (CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd*,
  *Arbuthnot v. Pierson* 607 F. App'x. 73 (2d Cir. 2015)...........................................12

*Cohen v. Brown Univ.*,
  No. 99-485-B, 2001 WL 1609383 (D.N.H. Dec. 5, 2001) .........................................8

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 (NGG), 2010 WL 2653354 (E.D.N.Y. June 24, 2010)................................8

*Courtney v. Avid Tech., Inc.*,
  No. 1:13-cv-10686-WGY, 2015 WL 2359270 (D. Mass. May 12, 2015)............................6, 19

*Crandall v. PTC Inc.*,
  No. 16-cv-10471-WGY, 2017 U.S. Dist. LEXIS 217581 (D. Mass. July 14,
  2017) ...................................................................................................6

*Diaz v. Jiten Hotel Mgmt. Inc.*,
  741 F.3d 170 (1st Cir. 2013)...........................................................................10

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
   989 F. Supp. 375 (D. Mass. 1997) ........................................................................................6

*Dura Pharms, Inc. v. Broudo*,
   544 U.S. 336 (2005) ...........................................................................................................14

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
   No. 08-11064, 2012 WL 6184269 (D. Mass. Dec. 10, 2012) ..........................................19, 20

*In re Fidelity/Micron Sec. Litig.*,
   167 F.3d 735 (1st Cir. 1999) ..............................................................................................17

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ........................9

*Fogarazzo v. Lehman Bros. Inc.*,
   No. 03 Civ. 5194 (SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ...........................7, 12

*In re Gilat Satellite Networks, Ltd.*,
   No. 02-1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ...............................................20

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ...........................................................................................................10

*Hill v. State St. Corp.*,
   No. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015) .................................9, 15, 17

*Johnson v. Georgia Highway Express Inc.*,
   488 F.2d 714 (5th Cir. 1974) .............................................................................................10

*Latorraca v. Centennial Techs. Inc.*,
   834 F. Supp. 2d 25 (D. Mass. 2011) ...............................................................................17, 18

*In re Lupron Mktg. & Sales Practices Litig.*,
   MDL No. 1430, 2005 WL 2006833 (D. Mass. Aug. 17, 2005) .....................................7, 9, 13

*In re Marsh & McLennan Cos. Sec. Litig.*,
   No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...............................20

*Medoff v. CVS Caremark Corp.*,
   No. 09-cv-554-JNL, 2016 WL 632238 (D.R.I. Feb. 17, 2016) ...........................10, 14, 16, 17

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) .............................................................................................................8

*In re Neurontin Mktg. & Sales Practice Litig.*,
   No. 04-cv-10981, 2014 WL 5810625 (D. Mass. Nov. 10, 2014) ..........................................6

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
No. 05-11148-PBS, 2009 WL 2408560 (D. Mass. Aug. 3, 2009)........................................7, 8

*Ray v. Lundstrom*,
No. 8:10CV199, 2012 WL 5458425 (D. Neb. Nov. 8, 2012)......................................................7

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005)...........................................................................................7, 8, 9

*Roberts v. TJX Cos., Inc.*,
No. 13-CV-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) ...........................6, 17

*In re Satcon Tech. Corp. Sec. Litig.*,
No. 1:11-cv-11270-DPW, slip op. (D. Mass. May 19, 2014), ECF No. 127............................6

*Schwartz v. TXU Corp.*,
No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Jan. 13, 2006)....................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)................................................................................................................5

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire
Litig.*,
56 F.3d 295 (1st Cir. 1995)...............................................................................................4, 5, 7

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007)..........................................................................5, 7, 8, 10

## Statutes

15 U.S.C. §§ 77z-1(a)(4)...........................................................................................................19

15 U.S.C. §§ 78u-4(a)(4) ...........................................................................................................19

Court-appointed Plaintiffs' Co-Lead Counsel, Milberg Tadler Phillips Grossman LLP ("Milberg"), Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz"), and Labaton Sucharow LLP ("Labaton Sucharow" and collectively with Milberg and Bernstein Litowitz, "Plaintiffs' Co-Lead Counsel"), having achieved a Settlement of $3,500,000 in cash for the benefit of the Settlement Class,[1] respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees in the amount of 25% of the Gross Settlement Fund, or $875,000, plus interest earned at the same rate as the settlement fund, on behalf of all Plaintiffs' Counsel.[2] Plaintiffs' Co-Lead Counsel also seek (i) payment of $288,846.02 in litigation expenses that were reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving the Action, and (ii) reimbursement of $61,450 pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for costs and expenses (including lost wages) incurred by the Settlement Class Representatives[3] directly related to their representation of the Settlement Class.

---

[1] All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulation and Agreement of Settlement, dated as of November 29, 2017 (ECF No. 236-1) (the "Stipulation") or in the Joint Declaration of Sanford P. Dumain, John C. Browne, and Jonathan Gardner in Support of (I) Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses (the "Joint Declaration" or "Joint Decl."), filed herewith. Citations to "¶" in this Memorandum refer to paragraphs in the Joint Declaration. All exhibits referenced herein are attached to the Joint Declaration. Citations to exhibits that have internal exhibits will be referenced as "Ex. __-__." The first numerical reference is to the designation of the entire exhibit to the Joint Declaration and the second alphabetical reference is to the exhibit designation within the exhibit itself.

[2] Plaintiffs' Counsel includes, in addition to Milberg, Labaton Sucharow, Bernstein Litowitz, and liaison counsel Berman Tabacco (formerly Berman DeValerio), Motley Rice LLC, the Fisher Law Offices, and Robbins Geller Rudman & Dowd LLP. These additional firms will be compensated out of the attorneys' fee awarded by the Court to Plaintiffs' Co-Lead Counsel.

[3] The Settlement Class Representatives are William A. Gaul ("Dr. Gaul") and the City of Fort Lauderdale Police & Fire Retirement System (the "City of Fort Lauderdale") (collectively, the "Settlement Class Representatives").

## PRELIMINARY STATEMENT

The proposed Settlement, which provides for the cash payment of $3,500,000 in exchange for the resolution of the Action, represents a very favorable recovery for the Settlement Class – approximately 33.3% of maximum estimated damages.  The Settlement is not "claims-made" and there is no reversion to Defendants -- the entire $3,500,000 is for the benefit of the Settlement Class.  As discussed below, the Settlement Class Representatives faced numerous challenges to proving both liability and damages that posed the serious risk of no recovery, or a substantially lesser recovery than the Settlement.  Defendants had strong defenses to the claims and there was considerable uncertainty throughout the case as to whether the Settlement Class Representatives would be able to obtain any recovery.  Plaintiffs' Co-Lead Counsel devoted substantial amounts of time and resources to the Action before the Settlement could be obtained – indeed the requested fee would compensate Counsel for *only 18%* of their combined lodestar, *i.e.*, their time in the case.

As detailed in the accompanying Joint Declaration,[4] among other things, Plaintiffs' Co-Lead Counsel: (i) conducted a thorough and wide-ranging investigation into the claims asserted in the Action, including a detailed review and analysis of publicly available information, which included: relevant filings with the U.S. Securities and Exchange Commission (the "SEC"), press releases, news articles, and other public statements issued by or concerning the Company, Defendants, and ponatinib; analysts' reports concerning the Company and ponatinib; information concerning clinical trials related to ponatinib conducted by the Company and submitted to the

---

[4]   The Joint Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*, the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and a description of the services that Plaintiffs' Co-Lead Counsel provided for the benefit of the Settlement Class.

United States Food and Drug Administration ("FDA"); and interviews with 38 potential witnesses, who were either former ARIAD employees or other persons with relevant knowledge; (ii) prepared and filed a detailed consolidated complaint, which included information from seven confidential witnesses; (iii) researched, drafted and filed an opposition to the comprehensive motions to dismiss the Complaint filed by Defendants and the underwriter defendants; (iv) participated in oral argument on the motions to dismiss; (v) appealed the Court's order granting the motions to dismiss, which resulted in a partial reversal with respect to the Exchange Act claims during an abbreviated four-day class period and the case being remanded; (vi) moved for class certification; (vii) successfully opposed Defendants' Motion for Judgment on the Pleadings; (viii) engaged in fact discovery, which included Plaintiffs' Counsel's review and analysis of documents produced by Defendants; (ix) conferred with experts regarding damages, insider trading and loss causation issues, as well as an expert in the pharmaceutical industry; and (x) engaged in extensive mediation efforts with former Judge Faith S. Hochberg (Ret.) of the United States District Court for the District of New Jersey, which included the preparation of mediation briefs, a full-day mediation session, and extensive subsequent negotiations. *See* ¶¶5, 12-49.

Plaintiffs' Co-Lead Counsel undertook these significant efforts without any compensation and in the face of substantial litigation risks in a very challenging case. The Settlement achieved here through Plaintiffs' Co-Lead Counsel's efforts is particularly noteworthy when viewed against the significant risks that the Settlement Class Representatives and Plaintiffs' Co-Lead Counsel would have had to overcome to prevail in this complex securities fraud litigation.

Settlement Class Representatives, Dr. Gaul and the City of Fort Lauderdale have each

endorsed the requested fee and expenses as fair and reasonable.  *See* Declaration of William A. Gaul at ¶¶1, 6-7, attached to the Joint Declaration as Exhibit 1 and the Declaration of Lynn Wenguer at ¶¶ 1, 4, attached to the Joint Declaration as Exhibit 2.

The reaction of the Settlement Class to date also supports the request.  Pursuant to the Court's January 19, 2018 Order for Notice and Hearing (ECF No. 245), the Court appointed Claims Administrator has mailed 7,675 Notice Packets to potential Settlement Class Members and nominees.[5]  On February 12, 2018, Epiq also caused the Publication Notice to be published in *Investor's Business Daily* and transmitted over the *PR Newswire*.  The Notice advised potential Settlement Class Members that Counsel would seek fees of up to 30% and payment of litigation expenses in an amount not to exceed $450,000.  *See* Exhibit 3 at ¶¶ 2, 7.  While the deadline for Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no objections have been received.  For all the reasons set forth below, Plaintiffs' Co-Lead Counsel respectfully request that the Court approve its application for an award of attorneys' fees and payment of expenses.

## ARGUMENT

## I.   PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND

The U.S. Supreme Court and the First Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535

---

[5]    *See generally* Declaration of Alexander Villanova Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, attached as Exhibit 3 to the Joint Declaration.

F. Supp. 2d 249, 265 (D.N.H. 2007).  Awards of reasonable attorneys' fees from a "common fund" provide compensation that "encourages capable plaintiffs' attorneys to aggressively litigate complex, risky cases like this one" and spread the costs of the litigation "proportionately among those benefitted by the suit." *Tyco*, 535 F. Supp. 2d at 265.

The Supreme Court has also emphasized that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'") (citation omitted)).

## II.    THE REQUESTED FEES ARE REASONABLE UNDER EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE LODESTAR METHOD

Fees awarded to counsel from a common fund can be determined under either the percentage-of-the-fund method or the lodestar method.  *See Thirteen Appeals*, 56 F.3d at 307. Under either method, the requested fee in this Action is fair and reasonable.

### A.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

The Supreme Court has endorsed the percentage method, stating that "under the 'common fund doctrine'. . . a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).  The First Circuit has also approved of the percentage method in common fund cases, noting that it is the prevailing method and that it "offers significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace." *Thirteen Appeals*, 56 F.3d at 308.  As a court in this District has noted, the percentage method "appropriately aligns the interests of the class with the interests of the class counsel[,] . . . is 'less burdensome to

administer than the lodestar method,' . . . 'enhances efficiency' and does not create a 'disincentive for the early settlement of cases.'" *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997) (quoting *Thirteen Appeals*, 56 F.3d at 307).

The requested 25% fee is well within the typical range of fees awarded in the First Circuit in comparable cases. *See In re Neurontin Mktg. & Sales Practice Litig.*, No. 04-cv-10981, 2014 WL 5810625, at *3 (D. Mass. Nov. 10, 2014) (noting that "nearly two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund").

A review of attorneys' fees awarded in class actions with comparably sized settlements in this Circuit, including fees awarded by this Court, strongly supports the reasonableness of the 25% fee request. *See Crandall v. PTC Inc.*, No. 16-cv-10471-WGY, 2017 U.S. Dist. LEXIS 217581, at *16 (D. Mass. July 14, 2017) (awarding 33 1/3% of $2.1 million settlement); *Roberts v. TJX Cos., Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) (awarding 33 1/3% of $4.75 million common fund); *Courtney v. Avid Tech., Inc.*, No. 1:13-cv-10686-WGY, 2015 WL 2359270, at *1 (D. Mass. May 12, 2015) (awarding 30% of $2.595 million settlement); *In re Moduslink Global Sols. Inc. Sec. Litig.*, No. 1:12-CV-11044, slip op. at 7 (D. Mass. Mar. 11, 2015), ECF No. 79 (awarding 33 1/3% of $4 million settlement);[6] *In re Satcon Tech. Corp. Sec. Litig.*, No. 1:11-cv-11270-DPW, slip op. at 1 (D. Mass. May 19, 2014), ECF No. 127 (awarding 30% of $3 million settlement); *Bennett v. Roark Capital Grp., Inc.*, No. 2:09-CV-00421-GZS, 2011 WL 1703447, at *2 (D. Me. May 4, 2011) (awarding one third of $1.1 million settlement and noting that "an award of one-third of the common fund reflects a fee

---

[6]     A compendium of unreported "slip" opinions is annexed as Exhibit 10 to the Joint Declaration.

that is customary").[7]

In sum, the fees commonly awarded in securities class actions involving comparable settlements amply demonstrate the reasonableness of the requested fee.

### B.    The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method

In the First Circuit, "[t]he lodestar approach (reasonable hours spent times reasonable hourly rates, subject to a multiplier or discount for special circumstances, plus reasonable disbursements) can be a check or validation of the appropriateness of the percentage of funds fee, but is not required." *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-11148-PBS, 2009 WL 2408560, at *1 (D. Mass. Aug. 3, 2009) (citation omitted); *accord Thirteen Appeals*, 56 F.3d at 307; *In re Lupron Mktg. & Sales Practices Litig.*, MDL No. 1430, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 81 (D. Mass. 2005).

When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *Tyco*, 535 F. Supp. 2d at 270 (quoting *Thirteen Appeals*, 56 F.3d at 307). In this case, the lodestar method – whether used directly or as a "cross-check" on the percentage method – strongly demonstrates the reasonableness of the requested fee.

Here, Plaintiffs' Counsel spent a total of 7,842 hours of attorney and other professional support time prosecuting this Action from its inception through January 19, 2018, the date the

---

[7]    The requested 25% fee is also well within the range of percentage fee awards that have been granted in comparable securities class actions in other Circuits.  *See, e.g.*, *Fogarazzo v. Lehman Bros. Inc.*, No. 03 Civ. 5194 (SAS), 2011 WL 671745, at *4 (S.D.N.Y. Feb. 23, 2011) (awarding one third of $6.75 million settlement); *Ray v. Lundstrom*, No. 8:10 CV 199, 2012 WL 5458425, at *3- 4 (D. Neb. Nov. 8, 2012) (awarding 33.3% of $3.1 million settlement).

Settlement was preliminarily approved by the Court. *See* Exhibit 8. Based on Plaintiffs' Counsel's current rates, their collective lodestar for this period is $4,839,983.75[8] *See id*. The requested 25% fee, which amounts to $875,000, therefore represents a negative "multiplier" of 0.18, or just 18% of Plaintiffs' Counsel's combined lodestar.

The multiplier in this Action is unquestionably well below the range of multipliers commonly awarded in securities class actions. Indeed, in securities class actions and other class actions with significant contingency risks, fees representing multiples above the lodestar are typically awarded to reflect contingency risks and other relevant factors. *See, e.g.*, *New England Carpenters Health Benefits Fund*, 2009 WL 2408560, at *2 (awarding fee representing an 8.3 multiplier); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) (awarding fee representing a 2.78 multiplier and noting that, "[w]here, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar"); *Tyco*, 535 F. Supp. 2d at 271 (awarding fee representing a 2.7 multiplier); *Relafen*, 231 F.R.D. at 82 (awarding fee representing a 2.02 multiplier). In addition, Plaintiffs' Co-Lead Counsel will continue to expend additional time following approval of the Settlement, overseeing the Claims Administrator's processing of claims and the distribution to eligible claimants, but will not seek any further fees.

Courts in this Circuit and elsewhere have recognized that where, as here, the requested attorneys' fees are below the amount of class counsel's lodestar that fact provides strong support for the reasonableness of the requested fee. *See Hill v. State St. Corp.*, No. 09-12146-GAO,

---

[8] The Supreme Court and courts in this Circuit have approved the use of current hourly rates in calculating the base lodestar figure as a means of compensating for the delay in receiving payment and the loss of the interest. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Cohen v. Brown Univ.*, No. 99-485-B, 2001 WL 1609383, at *1 (D.N.H. Dec. 5, 2001).

2015 WL 127728, at *18 (D. Mass. Jan. 8, 2015) ("the fact that counsel are seeking fees below the amount of class counsel's lodestar does support the reasonableness of the requested fee") (citation omitted); *Bezdek v. Vibram USA, Inc.*, 79 F. Supp. 3d 324, 350 (D. Mass. 2015) (fee representing 68% of lodestar was reasonable), *aff'd*, 809 F.3d 78, 84-85 (1st Cir. 2015); *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request.").

In sum, whether calculated as a percentage or under the lodestar method, the requested fee is well within the range of fees routinely awarded by courts in securities class actions.

## III.   FACTORS CONSIDERED BY COURTS IN THE FIRST CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

Although the First Circuit has not set forth a comprehensive list of factors to be considered when evaluating an attorneys' fees request pursuant to the percentage-of-the-fund approach, District Courts within this Circuit have assessed the reasonableness of proposed fees by considering the following factors, which track those used by the Second and Third Circuits in evaluating percentage fee awards:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any.

*See Hill*, 2015 WL 127728, at *17 (quoting *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 458 (D.P.R. 2011)); *Lupron*, 2005 WL 2006833, at *3; *Relafen*, 231 F.R.D. at 79;

*see also Tyco*, 535 F. Supp. 2d at 266.[9]  Consideration of all of these factors provides further confirmation that the fee requested here is reasonable.

### A.     The Amount of the Recovery Supports the Requested Fee

Here, Plaintiffs' Co-Lead Counsel have achieved a substantial recovery of $3,500,000 for the benefit of the Settlement Class, which represents 33.3% of maximum estimated recoverable class-wide aggregate damages of approximately $10.5 million.  *See* ¶6; *Medoff v. CVS Caremark Corp.*, No. 09-cv-554-JNL, 2016 WL 632238, at *6 (D.R.I. Feb. 17, 2016) (court approved $48 million settlement representing approximately 5.33% of estimated recoverable damages and noting that this is "well above the median percentage of settlement recoveries in comparable securities class action cases").  The Settlement is all cash, not based on the claims received, and there is no reversion to Defendants.  Numerous members of the Settlement Class will receive compensation that was otherwise uncertain when the case began.  The Settlement achieved by Plaintiffs' Co-Lead Counsel represents an excellent recovery for members of the Settlement Class, particularly in light of the substantial risks and obstacles posed in the Action.  *See, e.g.*, ¶¶56-69.  Plaintiffs' Co-Lead Counsel submit that the size and quality of the recovery obtained is a testament to the quality of Plaintiffs' Co-Lead Counsel's representation and supports the reasonableness of the requested fee.

---

[9]     When a fee is awarded on a lodestar basis, courts also consider the 12  factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983).  *See  Diaz v. Jiten Hotel Mgmt. Inc.*, 741 F.3d 170, 177 n.7 (1st Cir. 2013).  These factors, which substantially overlap with the factors listed above, are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  *See Diaz*, 741 F.3d at 177 n.7.

**B.      The Skill and Experience of Counsel Support the Requested Fee**

Considerable litigation skills were required for Plaintiffs' Co-Lead Counsel to achieve the Settlement.  This was a complex pharmaceutical securities case involving a number of nuanced factual and legal issues.  Given the many contested issues, it took highly skilled counsel to represent the class and bring about the substantial recovery that has been obtained.  *See* ¶¶89-92.

As demonstrated by their firm resumes (attached as Exhibits 4-6 to the Joint Declaration), Labaton Sucharow, Milberg, and Bernstein Litowitz are among the nation's leading securities class action firms.  Plaintiffs' Co-Lead Counsel submit that the skill of their attorneys, the quality of their efforts in the litigation, their substantial experience in securities class actions, and their commitment to the litigation were key elements in enabling Plaintiffs' Co-Lead Counsel to negotiate this Settlement.

Courts have also recognized that the quality of the opposition faced by plaintiffs' counsel should also be taken into consideration in assessing the quality of plaintiffs' counsel's performance.  Here, the Defendants were represented by Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., a well-respected defense firm.  Defendants' Counsel vigorously and ably defended the Action for more than three and a half years.  Notwithstanding this opposition, Plaintiffs' Co-Lead Counsel's thorough investigation and their resulting ability to present a strong case enabled them to achieve a favorable recovery for the benefit of the Settlement Class. Thus, this factor supports the reasonableness of the requested fee.  *See, e.g.*, *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *30 (N.D. Tex. Jan. 13, 2006) ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation.").

**C.    The Complexity and Duration of the Litigation Support the Requested Fee**

There can be no dispute that this litigation was extremely complex and vigorously litigated by both Plaintiffs and Defendants for more than three years, including an appeal to the First Circuit.  Even in more straightforward cases, courts have long recognized that securities class actions are generally complex and difficult.  *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014), *aff'd, Arbuthnot v. Pierson*  607 F. App'x. 73  (2d Cir. 2015) ("the complex and multifaceted subject matter involved in a securities class action such as this supports the fee request"); *Fogarazzo v. Lehman Bros.* No. 03 civ 5194, 2011 WL 671745, at *3 (S.D.N.Y Feb. 23, 2011) ("courts have recognized that, in general, securities actions are highly complex").

As described in greater detail in the Joint Declaration, the claims asserted in the Action were factually complex and nuanced.  They involved Defendants' alleged false and misleading statements and omissions regarding the commercial prospects, safety profile and efficacy of ARIAD's most important product, its drug ponatinib, and its prospects for approval for front line use by the FDA with a "favorable label" for the drug.  *See, e.g.*  ¶¶15-18.  The claims asserting alleged misstatements and omissions involved dense subjects in the pharmaceutical industry and were vigorously contested by Defendants' Counsel throughout the litigation.  Plaintiffs' Co-Lead Counsel faced heightened pleading and proof challenges under the PSLRA and relevant "loss causation" jurisprudence.

Plaintiffs' Co-Lead Counsel had to demonstrate substantial expertise in order to marshal evidence on these matters through their extensive investigation.  Plaintiffs' Co-Lead Counsel confronted these myriad difficulties and were able to achieve a very favorable recovery for the Settlement Class.  Thus, this factor fully supports the fee requested.

### D.       The Risk of Non-Payment Was Extremely High In This Case

The fully contingent nature of Plaintiffs' Co-Lead Counsel's fee and the substantial risks posed by the litigation are also very important factors supporting the requested fee. "Many cases recognize that the risk [of non-payment] assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award." *Lupron*, 2005 WL 2006833, at *4 (internal quotation marks omitted).

As explained in the Joint Declaration (*see* Section VII), from the outset of this case, it was apparent that Plaintiffs' Co-Lead Counsel faced very significant challenges to establishing liability and damages in this Action, and there was a significant risk that the case could be litigated for many years but result in no recovery for the class and no payment for Plaintiffs' Counsel.  Nonetheless, Plaintiffs' Co-Lead Counsel devoted an enormous amount of resources to the vigorous and effective prosecution of the case and made every effort to obtain the recovery achieved here for the benefit of the class.

On liability, Defendants vigorously disputed virtually every element of Plaintiffs' claims, including falsity, materiality and scienter, and there was a significant risk that at trial (or on subsequent appeal) Defendants could prevail.  ¶¶56-64.   Only two alleged misstatements remained after the First Circuit's partial reversal of the motion to dismiss order, both of which were contained in a December 11, 2012 analyst report.  One of the alleged misstatements related to the prospects of FDA approval of ponatinib.  Defendants would have continued to argue that their optimism regarding FDA approval was in fact justified given that the FDA had approved ponatinib and gave it a favorable level for those patients who were "resistant or intolerant to prior tyrosine kinas inhibitor therapy."  ¶58.  Regarding the other alleged misstatement, *i.e.*, that "pancreatitis" with a 5% incidence rate "is the most prevalent" serious adverse event associated with ponatinib, Defendants would have continued to argue that this was an accurate statement.

13

¶59.   Complex scientific evidence, presented through the parties' multiple dueling experts' testimony, would have been necessary to establish the falsity and materiality of the two alleged misstatements, and there was no certainty that a jury at trial, would have accepted the Settlement Class Representatives' experts' views.  ¶61.

Defendants would also continue to argue that none of the Defendants acted with scienter. For example, Defendants would argue that the stock sales of some of the Individual Defendants were made pursuant to trading plans and thus fail to establish a profit motive sufficient to give rise to an inference of scienter.  ¶63.  Furthermore, Defendants would likely argue that the close supervision of the FDA over ARIAD strongly rebuts any inference that ARIAD was acting recklessly in hiding events from investors.  *Id*.

Even if the Settlement Class Representatives had succeeded in establishing liability on their claims, Defendants had powerful "loss causation" and damages arguments under the federal securities laws that, if accepted, could have substantially reduced or eliminated the class' damages altogether.  *See Dura Pharms, Inc. v. Broudo*, 544 U.S. 336 (2005).  *See also Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 86 (1st Cir. 2014) (plaintiffs must prove that "the stock market must have reacted to the subsequent disclosure of the misconduct and not to a tangle of other factors").

In the face of these uncertainties regarding the outcome of the case, Plaintiffs' Co-Lead Counsel prosecuted this Action on a wholly contingent basis, knowing that the litigation could last for years and would require the devotion of a substantial amount of attorney time and a significant advance of litigation expenses with no guarantee of any compensation.  Plaintiffs' Co-Lead Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee.  *See CVS*, 2016 WL 632238, at *9 ("Where, as here, lead counsel undertook

14

this action on a contingency basis and faced a significant risk of non-payment, this factor weighs more heavily in favor of rewarding litigation counsel.").

Indeed, given litigation risks such as these, courts typically award a substantial *positive* multiplier on counsel's lodestar to compensate for the possibility that there may have been no recovery at all.  Here, however, the requested fee represents substantially *less* than Plaintiffs' Counsel's lodestar.  Accordingly, this factor strongly supports the reasonableness of the fee.

### E.      The Amount of Time Devoted to the Litigation Supports the Requested Fee

The extensive time and effort expended by Plaintiffs' Co-Lead Counsel in prosecuting this Action and achieving the Settlement also establish that the requested fee is justified and reasonable.  *See Hill*, 2015 WL 127728, at *19.  The Joint Declaration details the substantial efforts in prosecuting the Settlement Class Representatives' claims over the course of more than three and a half years of litigation.  As set forth in detail in the Joint Declaration, Plaintiffs' Co-Lead Counsel, among other things:

- conducted a detailed factual investigation into the allegedly fraudulent misrepresentations made by Defendants, including a thorough review of publicly available information such as SEC filings, press releases, analyst reports, as well as interviews with numerous witnesses and consultation with experts on damages, insider trading, loss causation, and the pharmaceutical industry (¶¶5, 16);

- drafted a detailed Complaint (¶¶5, 15-18);

- drafted and argued an opposition to defendants' motions to dismiss (¶¶5, 24-26, 28);

- appealed the Court's order granting the defendants' motions to dismiss, which resulted in a partial reversal and the case being remanded (¶¶5, 31-38);

- prepared and filed a motion for class certification that was pending when the agreement in principle to settle was reached (¶¶39-40);

- engaged in fact discovery (¶¶45-47); and

- engaged in extensive arm's-length settlement negotiations, which included mediation efforts with former Judge Hochberg that involved the preparation of mediation briefs (¶¶48-49).

As noted above, Plaintiffs' Counsel expended a total of 7,842 hours investigating,

prosecuting and resolving this Action through January 19, 2018 with a total lodestar value of over $4,839,983.75.  *See* ¶88; Ex. 8.  The time and effort devoted to this case was critical in obtaining the favorable result achieved, and confirms that the fee request here is reasonable.

### F.    Awards in Similar Cases Support The Requested Fee

As discussed above in Section II.A, Plaintiffs' Co-Lead Counsel's requested fee of 25% of the Gross Settlement Fund is well within the range of fee awards in class action cases in this Circuit and across the country.  Moreover, the reasonable percentage fee award represents a multiplier of only .18, which is well below the norm awarded in class action cases with substantial contingency risks.  *See* Section II.B, *supra*.  Thus, this factor strongly supports the reasonableness of the requested fee.

### G.    Public Policy Considerations Support The Requested Fee

A strong public policy concern exists for rewarding firms for bringing successful securities litigation.  The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman*, 472 U.S. at 310 (citation omitted).  Accordingly, public policy favors granting Plaintiffs' Co-Lead Counsel's fee and expense application here.  *See CVS*, 2016 WL 632238, at *9 ("public policy supports rewarding counsel for prosecuting securities class actions, especially where counsel's dogged efforts—undertaken on a wholly contingent basis—result in satisfactory resolution for the class") (citation omitted).

### H.    Settlement Class Representatives Have Approved the Requested Fee

The Court-appointed Settlement Class Representatives – Dr. Gaul and the City of Fort Lauderdale were appointed pursuant to the PSLRA.  As set forth in the Settlement Class Representatives' respective declarations, each of the Settlement Class Representatives fully supports and approves the fee request.  *See* Ex. 1 ¶¶1, 6-7; Ex. 2 ¶¶1, 4.  Accordingly, the

endorsement of the fee request in this PSLRA action supports its approval.  *See, e.g.*, *CVS*, 2016 WL 632238, at \*9 (co-lead plaintiffs' consent to the fee request weighed in favor of concluding that the request was reasonable); *Hill*, 2015 WL 127728, at \*19 (same).

### I.      The Reaction of the Settlement Class to Date Supports the Requested Fee

The reaction of the Settlement Class to date also supports the requested fee.  As of April 3, 2018, the Claims Administrator has disseminated 7,765 Notices to potential Settlement Class Members and nominees (*see* Ex. 3 ¶¶3-12) informing them of, among other things, Plaintiffs' Co-Lead Counsel's intention to apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the settlement amount and payment of up to $450,000 in expenses.  While the time to object to the fee and expense application does not expire until April 19, 2018, to date, no objections to the amount of attorneys' fees and expenses set forth in the Notice have been received.  Plaintiffs' Co-Lead Counsel will address any objections received in their reply papers to be filed with the Court on May 3, 2018.  Accordingly, the lack of objections from Settlement Class Members weighs in favor of the requested award.  *See TJX Cos.*, 2016 WL 8677312, at \*11; *CVS*, 2016 WL 632238, at \*9.

### IV.     THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Plaintiffs' Co-Lead Counsel's fee application includes a request for payment of litigation expenses that were reasonably incurred and necessary to the prosecution of this Action.  *See* ¶¶104-09.  These expenses are properly recoverable.  *See In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund . . . expenses, reasonable in amount, that were necessary to bring the action to a climax"); *Latorraca v. Centennial Techs. Inc.*, 834 F. Supp. 2d 25, 28 (D. Mass. 2011) ("In addition to attorneys'

fees, lawyers who recover a common fund for a class are entitled to reimbursement of out-of-pocket expenses incurred during the litigation."). As set forth in detail in the Joint Declaration, Plaintiffs' Counsel incurred $288,846.02 in litigation expenses on behalf of the Settlement Class in the prosecution of the Action. ¶104. Payment of these expenses is fair and reasonable.

The expenses for which Plaintiffs' Co-Lead Counsel seek payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, costs and fees for consulting experts, on line legal and factual research, out of town travel costs, filing fees, work-related transportation, out-of-office working meals, duplicating costs, court reporting services costs, and mediation fees. ¶¶106-08. One of the largest component of expenses related to experts. Specifically, $151,003.00 or approximately 52% of total expenses, was expended on experts in the fields of damages, loss causation, insider trading, and the pharmaceutical industry. ¶¶107. The retention of these experts was valuable for Plaintiffs' Co-Lead Counsel's analysis and development of the claims asserted in the Action as well as for their discovery and mediation efforts. *Id*. Complete categorical breakdowns of the expenses incurred by Plaintiffs' Counsel are included as Exhibit B to each of the firm's individual declarations. *See* Exs. 4-B, 5-B, 6-B, and 7-B.

The Notice informed potential Settlement Class Members that Plaintiffs' Co-Lead Counsel would apply for litigation expenses, as well as for the costs incurred by the Settlement Class Representatives in an amount not to exceed $450,000. The total amount of expenses requested, $350,296.02 (which includes $288,846.02 in Plaintiffs' Counsel's litigation expenses and the $61,450 in PSLRA awards to reimburse the Settlement Class Representatives' costs and expenses), is below the amount listed in the Notice and, to date, there has been no objection to the request for expenses.

18

## V.     THE SETTLEMENT CLASS REPRESENTATIVES SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES PURSUANT TO THE PSLRA

In connection with Plaintiffs' Co-Lead Counsel's request for payment of litigation expenses, the Settlement Class Representatives seek a total of $61,450 in PSLRA awards to reimburse their costs and expenses directly relating to their representation of the Settlement Class.  *See* Joint Decl. ¶¶110-12 and Exs. 1 and 2 thereto.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. §§ 77z-1(a)(4), 78u-4(a)(4).

In  *In re Evergreen Ultra Short Opportunities Fund Securities Litigation*, No. 08-11064, 2012 WL 6184269, at *2 (D. Mass. Dec. 10, 2012), the Court reimbursed institutional lead plaintiffs $54,626 for the time that their employees spent assisting in prosecution of the action, recognizing that the plaintiffs had "worked closely with counsel throughout the case, communicated with counsel on a regular basis, reviewed and provided input with respect to counsel's submissions, provided information, produced documents, and participated in settlement discussions."  *See also Avid Tech.*, 2015 WL 2359270, at *1 (awarding $10,000); *Ahearn v. Credit Suisse First Boston LLC*, No. 03-CV-10956 (JLT), slip op. at 5-6 (D. Mass. June 7, 2006), ECF No. 82 (awarding $35,000).

As discussed in the Settlement Class Representatives' supporting declarations, the Settlement Class Representatives have fulfilled their duties related to their representation of the Settlement Class.  *See generally* Ex. 1 and Ex. 2.  In particular, Dr. Gaul was a long-term investor in ARIAD and undertook significant effort to review pleadings and briefs; engaged in discovery efforts to gather documents and information responsive to Defendants' discovery requests; and also attended the mediation in the Action.  Ex. 1 ¶3.  The request of Dr. Gaul,

which totals $61,250, is based on 250 hours of work at $245 per hour.[10]  Ex. 1 ¶10.  The request of Ft. Lauderdale, which totals $200, is based on two hours or work at $100 per hour.  Ex. 2 ¶7.

The foregoing efforts are precisely the types of activities Courts have found to support reimbursement to class representatives.  *See, e.g.*, *Evergreen Ultra*, 2012 WL 6184269, at *2; *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding more than $200,000 to lead plaintiffs to compensate them "for their reasonable costs and expenses incurred in managing this litigation and representing the Class" and noting that these efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives").

The Notice stated that the litigation expenses requested by Plaintiffs' Co-Lead Counsel may "include an application for reimbursement of the reasonable costs and expenses incurred by the Settlement Class Representatives directly related to their representation of the Settlement Class."  Ex. 3-B at 2, 7.  To date, there have been no objections to this request.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Co-Lead Counsel respectfully request that the Court award (i) attorneys' fees in the amount of 25% of the Gross Settlement Fund, or $875,000 plus interest accrued at the same rate as earned by the Gross Settlement Fund; (ii) payment of $288,846.02 in litigation expenses; and (iii) $61,450 in reimbursement of the Settlement Class Representatives' costs and expenses.

---

[10]    Courts that have approved requests of lead plaintiffs who work in the financial industry or run a business, such as Dr. Gaul, have used hourly rates of between $200 - $300 per hour.  *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02-1510, 2007 WL 2743675, at *18-19 (E.D.N.Y. Sept. 18, 2007) (awarding lead plaintiffs, individuals working for mutual funds, $10,000 at a rate of $300/hr); *In re Charter Commc'ns. Inc. Sec. Litig.*, 02-CV-1186 CAS, 2005 WL 4045741, at *24-25 (E.D. Mo. June 30, 2005) (awarding investment manager $26,625 at a rate of $300/hr based on his annualized compensation).

Dated: April 5, 2018                                 Respectfully submitted,


**BERMAN TABACCO**                                   **MILBERG   TADLER   PHILLIPS   GROSSMAN LLP**
Steven J. Buttacavoli (BBO # 651440)
1 Liberty Square
Boston, Massachusetts 02109                          By: */s/ Sanford P. Dumain*
Telephone: (617) 542-8300                                 Sanford P. Dumain (*pro hac vice*)
Facsimile: (617) 542-1194                            One Penn Plaza, Suite 1920
sbuttacavoli@bermantabacco.com                       New York, NY 10119
                                                     Tel: (212) 594-5300
                                                     Fax: (212) 868-1229
*Liaison Counsel for Plaintiffs*                     sdumain@milberg.com

                                                     *Co-Lead Counsel for Plaintiffs*


                                                     **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

                                                     By: */s/ John C. Browne*
                                                         John C. Browne (*pro hac vice*)
                                                     1251 Avenue of the Americas
                                                     New York, NY 10020
                                                     Tel:  (212) 554-1400
                                                     Fax: (212) 554-1444
                                                     johnb@blbglaw.com

                                                     *Co-Lead Counsel for Plaintiffs*


                                                     **LABATON SUCHAROW LLP**

                                                     By: */s/ Jonathan Gardner*
                                                         Jonathan Gardner (*pro hac vice*)
                                                     140 Broadway
                                                     New York, NY 10005
                                                     Tel:  (212) 907-0700
                                                     Fax: (212) 818-0477
                                                     jgardner@labaton.com

                                                     *Co-Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of April, 2018, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

*/s/ Sanford P. Dumain*

Sanford P. Dumain
